WEEKS MARINE, INC., Petitioner,

v.

Maximino GARZA, Respondent.

No. 10–0435.

Supreme Court of Texas.

Argued Oct. 4, 2011.

Decided June 22, 2012.

Frank E. Perez, Frank E. Perez & Associates, P.C., Brownsville, TX, Baldemar Garza, The Law Office of Baldemar Garza, Rio Grande City, TX, for Weeks Marine, Inc.

John C. Schwambach Jr., Jeremy Richard Newell, Mark T. Murray, Stevenson & Murray, Houston, Isabel Trevino, Rio Grande City, TX, Felipe Garcia Jr., Garcia–Williams Law Firm, Edinburg, TX, Jack O'Neill, Clements O'Neill Pierce & Nickens, LLP, Houston, TX, for Maximino Garza.

Steven Jon Knight, Chamberlain Hrdlicka White Williams & Aughtry, Houston, TX, for Amicus Curiae Orion Marine Construction.

Chief Justice JEFFERSON delivered the opinion of the Court, joined by Justice HECHT, Justice WAINWRIGHT, Justice GREEN, Justice JOHNSON, and Justice WILLETT.

Justice Story's term for seamen, "wards of the admiralty," describes the law's belief that workers in the industry are susceptible to unique perils for which special accommodation is required. The common law has long compelled a seaman's employer to provide maintenance (food and lodging) and cure (necessary medical services) when a seaman is hurt while working on his employer's vessel. An employer that does not provide these essentials is liable not only for maintenance and cure, but also compensatory damages.

The worker in this case was injured while on board his employer's anchor barge. A jury found that he was harmed

as a result of the employer's negligence, determined that the employer owed $35,000 for maintenance and cure, and awarded $1.12 million as compensation for injuries the accident caused. The employer contests none of these findings.

An employer's failure to provide maintenance and cure may itself cause injury, or it may aggravate an injury the worker sustained on the ship. The jury awarded $2.5 million under this category. We must decide whether the evidence is legally sufficient to support that finding, which the trial court awarded and the court of appeals affirmed. We can find no evidence that the employer's breach of its maintenance-and-cure obligation injured the seaman. For that reason and others we explain below, we affirm in part and reverse in part the court of appeals' judgment.

## I. Background

For twenty-eight years, Maximino Garza worked aboard the *Tom James*, a dredge owned and operated by Weeks Marine. A dredge is a vessel engaged in maintenance work on canals, rivers, and ports, carving deep channels so that large ships can navigate the waterways. Garza worked primarily in the engine room as a watch engineer. But on February 15, 2006, Garza was on board an anchor barge, also owned and operated by Weeks Marine, that was adjacent to the *Tom James*. Garza's supervisor, John LaGrange, was teaching Garza how to adjust the friction on the barge. As LaGrange held a 2 1/2 inch wide steel friction bar, he told Garza to retrieve tools from the *Tom James*. Just as Garza set out for the tools, LaGrange released the bar, which sprang

forward and struck Garza in the head. Although Garza was wearing a hard hat, the force of the blow nearly knocked him unconscious.

The next day, LaGrange took Garza to see Dr. Glenn Montet, who diagnosed Garza with a contused cranium, a mild concussion, and a cervical sprain. Dr. Montet returned Garza to work with no restrictions. Garza's head and neck pain continued. He returned to Dr. Montet, who again released him with no restrictions. Weeks Marine paid for both visits.

Eventually the pain became severe, and Garza asked his supervisor for permission to seek additional medical attention. Garza began seeing his own doctor, Dr. Fred Perez, in May. Dr. Perez advised Garza not to work and recommended a conservative treatment of therapy, exercise, and medication. The pain did not subside. Dr. Perez next prescribed facet injections. When those did not work, Dr. Perez recommended surgery, which occurred in October 2007, twenty months after the accident. Weeks Marine did not pay for any of this medical care.

■ Garza sued Weeks Marine, asserting four claims: (1) a Jones Act [1] negligence claim, (2) a claim that the anchor barge was unseaworthy, (3) a claim for unpaid maintenance and cure,[2] and (4) a claim for compensatory damages caused by Weeks Marine's unreasonable failure to pay maintenance and cure. The jury found for Garza on all but the unseaworthiness claim. It found Weeks Marine 80% negligent, Garza 20%, and assessed $1,121,000 in compensatory damages.[3]

---

**1.** 46 U.S.C. § 30104.

**2.** Maintenance is the right of a seaman to food and lodging if he is injured while in the service of a ship. Cure is the right to necessary medical services. *Morel v. Sabine Tow-*

*ing & Transp. Co.,* 669 F.2d 345, 346 (5th Cir.1982).

**3.** This award included the following:
 a. Past physical pain and suffering: $100,000

For maintenance and cure, the jury found that Weeks Marine unreasonably failed to pay Garza's maintenance and cure and that Garza would reach maximum cure on April 7, 2008.[4] The jury awarded Garza $35,000 for the unpaid maintenance and cure[5] and $2,500,000 for the injuries caused by Weeks Marine's unreasonable failure to pay.[6] The trial court rendered judgment on the maintenance award[7] and both the negligence and unreasonable-failure-to-pay awards. The court did not reduce Garza's award by his percentage of fault because the jury determined that Garza was acting under specific orders at the time of the accident. *See Williams v. Brasea, Inc.*, 497 F.2d 67, 73 (5th Cir.1974) ("[A] seaman may not be contributorily negligent for carrying out orders that result in his own injury . . . ."). The trial court also awarded Garza attorney's fees, expert witness fees, and court costs. *See* Tex. Civ. Prac. & Rem.Code § 42.004.

The court of appeals affirmed. 370 S.W.3d 390, 400. It held that allowing Garza to recover for physical pain and mental anguish under both the negligence claim and the unreasonable-failure-to-pay claim did not constitute a double recovery. *Id.* at 394. Because each award was based on a different theory of liability and because each theory depended on separate and distinct injuries, the court held that the trial court did not err in submitting a damage question for the unreasonable-failure-to-pay claim. The court did not decide whether evidence supported the jury finding that Garza suffered injuries as a result of Weeks Marine's failure to pay and instead held that Weeks Marine waived the issue by failing to adequately brief it. *Id.* at 396 n. 1. Finally, the court held that there was sufficient evidence to support the jury's findings that Weeks Marine was unreasonable in failing to pay Garza's maintenance and cure and that Garza was acting under specific orders at the time of the accident. *Id.* at 394. We granted Weeks Marine's petition for review. 54 Tex.Sup.Ct.J. 1494 (July 22, 2011).

Weeks Marine does not challenge the Jones Act negligence award or the award for unpaid maintenance and cure. Instead, it argues that Garza received a double recovery because there is no evidence that its failure to pay maintenance and cure separately injured Garza. Additionally, Weeks Marine argues that no evidence supports the jury finding that Garza was acting under specific orders at the time of the accident. Because the court of appeals held that Weeks Marine waived its challenge to the unreasonable-failure-to-pay award, we address that issue first.

b. Future physical pain and suffering: $75,000
c. Past mental anguish: $100,000
d. Future mental anguish: $75,000
e. Income loss in the past: $105,000
f. Impairment of future earning capacity: $350,000
g. Past medical expenses: $116,000
h. Future medical expenses: $200,000.

4. Maximum cure is the point at which no further improvement in the seaman's medical condition may reasonably be expected. A shipowner has to provide maintenance and cure up to the maximum cure date. *Springborn v. Am. Commercial Barge Lines, Inc.*, 767 F.2d 89, 95 (5th Cir.1985).

5. This award included the following:

a. Maintenance: $15,000
b. Cure: $20,000.

6. This award included the following:

a. Past physical pain and suffering: $500,000
b. Future physical pain and suffering: $750,000
c. Past mental anguish: $400,000
d. Future mental anguish: $850,000.

7. Garza did not elect to receive his cure award but instead chose the higher award for medical expenses under the negligence claim.

## II. Weeks Marine preserved its no evidence challenge.

At the court of appeals, Weeks Marine argued that Garza received a double recovery for his pain and suffering and mental anguish because the jury awarded those damages for both the unreasonable-failure-to-pay claim and the negligence claim. Garza disagreed, contending that noneconomic damages are recoverable under both claims and that he presented evidence to support both awards. When Weeks Marine responded that there was no evidence that its unreasonable failure to pay caused Garza a distinct injury to support the award under that claim, the court of appeals held that Weeks Marine had waived the issue. Weeks Marine made "this argument in relation to the complaint that Garza received a double recovery for the same injury." 370 S.W.3d at 396 n. 1. But because Weeks Marine "did not raise or brief a complaint that there [was] legally insufficient evidence to support the jury's damage award," the court considered the issue waived. *Id.*

■ "[D]isposing of appeals for harmless procedural defects is disfavored." *Perry v. Cohen,* 272 S.W.3d 585, 587 (Tex. 2008) (per curiam) (citing *Verburgt v. Dorner,* 959 S.W.2d 615, 616 (Tex.1997)). Instead, "[a]ppellate briefs are to be construed reasonably, yet liberally, so that the right to appellate review is not lost by waiver." *Id.* Appellate courts must treat the statement of an issue "as covering every subsidiary question that is fairly included." TEX.R.APP. P. 38.1(f). An appellant can preserve error "in the body of their appellate brief," even if it is not separately listed in the notice of appeal or presented as an issue in the brief. *Perry,* 272 S.W.3d at 586. Weeks Marine did not separately and specifically present its no evidence challenge in the issues listed in its appellate brief. But a fair reading shows it argued that there was no evidence of a separate injury to support the unreasonable-failure-to-pay award.[8] The basis of a double recovery challenge is that a party recovered twice for one injury. *See, e.g., Tony Gullo Motors I, L.P. v. Chapa,* 212 S.W.3d 299, 303 (Tex.2006) (" 'There can be but one recovery for one injury, and the fact that ... there may be more than one theory of liability[ ] does not modify this rule.' " (alterations in original) (quoting *Stewart Title Guar. Co. v. Sterling,* 822 S.W.2d 1, 8 (Tex.1991))). Fairly included in that challenge is the argument that there is no independent evidence of a second injury. Weeks Marine presented this subsidiary question in its second issue.

Within the second issue, Weeks Marine argued that "there was no evidence presented to show Mr. Garza's injuries were aggravated by Weeks' denial to pay maintenance and cure." Weeks Marine then briefed this argument with appropriate citations to authorities and to the record under the subheading, "Mr. Garza Did Not Suffer An Aggravated Injury." Weeks Marine met its briefing obligations. *See* TEX.R.APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). For that reason, and because "appellate courts should reach the merits of an appeal whenever reasonably possible," *Perry,* 272 S.W.3d at 587, the court of appeals

---

8. Weeks Marine had also urged this argument in the trial court and objected to the trial court's submission of the damage question for the unreasonable-failure-to-pay claim on that basis. *Cf. Minn. Mining & Mfg. Co. v. Nishika Ltd.,* 953 S.W.2d 733, 738 (Tex.1997) (noting that the defendant repeatedly stated its no evidence objection to a damage question in the trial court and in this Court).

erred in determining that Weeks Marine waived its no evidence challenge.

### III. No evidence supports the unreasonable-failure-to-pay award.

 Under maritime law, an injured seaman has a trilogy of potential claims against his employer: (1) a Jones Act negligence claim, (2) a claim that the ship was unseaworthy, and (3) a claim for maintenance and cure. *Chandris, Inc. v. Latsis,* 515 U.S. 347, 354, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995). The unseaworthiness claim and the maintenance-and-cure claim arise under general maritime law, while the negligence claim is statutory. *Id.* "Historically, conceptually, and functionally, the unseaworthiness and Jones Act tort actions are 'Siamese twins.'" David W. Robertson, *Punitive Damages in U.S. Maritime Law:* Miles, Baker, *and* Townsend, 70 LA. L.REV. 463, 464 (2010). Both compensate a seaman for injuries suffered. "The much older maintenance and cure action does not derive from tort principles and is something like a first cousin to the other two." *Id.* It does not compensate for injuries but instead serves a curative function. *See, e.g., Johnston v. Tidewater Marine Serv.,* No. 96–30595, 1997 WL 256881, at *2 (5th Cir. Apr. 23, 1997) (per curiam) ("A claim for unseaworthiness is compensatory in nature ... while a claim for maintenance and cure is curative in nature."). A maintenance-and-cure claim "concerns the vessel owner's obligation to provide food, lodging, and medical services to a seaman injured while serving the ship." *Lewis v. Lewis & Clark Marine, Inc.,* 531 U.S. 438, 441, 121 S.Ct. 993, 148 L.Ed.2d 931 (2001). A shipowner is required "not only to pay for the seaman's maintenance and cure but to take all reasonable steps to make sure that the seaman, when he is injured or becomes sick, receives proper care and treatment." GRANT GILMORE & CHARLES L. BLACK, JR.,

THE LAW OF ADMIRALTY § 6–13, at 310 (2d ed. 1975). The maintenance-and-cure obligation "dates back centuries as an aspect of general maritime law" and is "justified on humanitarian and economic grounds." *Atl. Sounding Co. v. Townsend,* 557 U.S. 404, 129 S.Ct. 2561, 2568, 174 L.Ed.2d 382 (2009). A claim for maintenance and cure is considered contractual in nature and arises from the relationship between seaman and employer.

 Though the traditional claim for unpaid maintenance and cure does not derive from tort principles, a breach of the maintenance-and-cure duty may result in full tort damages if the breach causes the seaman a personal injury. For example, if the shipowner breaches the duty by failing to provide proper care and causes the seaman personal injury, "the shipowner is liable not only for the increased medical expenses and maintenance that may become necessary but also for resulting damages." GILMORE & BLACK § 6–13, at 311; *see also Gaspard v. Taylor Diving & Salvage Co.,* 649 F.2d 372, 376 (5th Cir.1981) (noting that tort damages under a maintenance-and-cure claim would be appropriate if the jury determined that the employer's failure to provide the diver with proper recompression treatment caused or contributed to the diver's developing bone necrosis). Or if the shipowner breached the duty by unreasonably failing to pay for the maintenance and cure, the seaman can be compensated for injuries that the unreasonable failure to pay caused. *See, e.g., Morales v. Garijak, Inc.,* 829 F.2d 1355, 1358 (5th Cir.1987) (recognizing that a shipowner's unreasonable withholding of maintenance and cure makes the shipowner liable for "the damages that have resulted from the failure to pay, such as the aggravation of the seaman's condition, determined by the usual principles applied in tort cases to measure compensatory dam-

ages"), *abrogated on other grounds by Guevara v. Mar. Overseas Corp.,* 59 F.3d 1496 (5th Cir.1995).[9]

■ When it results in personal injury, the failure to provide maintenance and cure can give rise to a Jones Act claim, *see De Zon v. Am. President Lines, Ltd.,* 318 U.S. 660, 668–69, 63 S.Ct. 814, 87 L.Ed. 1065 (1943) (holding that a shipowner could be liable under the Jones Act "for harm suffered as the result of any negligence on the part of the ship's doctor"), or a stand-alone action for maintenance and cure, *see Atl. Sounding Co.,* 129 S.Ct. at 2573–74 (recognizing a "seaman's right to choose among overlapping statutory and common-law remedies for injuries sustained by the denial of maintenance and cure"). Thus, a seaman's trilogy of potential claims can become a trilogy plus one: (1) a Jones Act negligence claim, (2) an unseaworthiness claim, (3) a claim for unpaid maintenance and cure, and (4) a claim for personal injuries caused by the failure to provide maintenance and cure. If any of the claims seek to recover damages for the same injury—for example, a Jones Act claim and a failure-to-provide claim seeking to recover damages for injuries caused by the negligent provision of care—the seaman can recover under either claim but not both. *See, e.g., Gaspard,* 649 F.2d at 376 ("The jury was thus entitled to award Gaspard full tort damages under either the Jones Act count, the maintenance and cure count, or both, as long as it did not award a double recovery for any element of damages."); *cf.* 1 Thomas J. Schoenbaum, Admi-

RALTY AND Maritime Law § 6–25, at 494 (5th ed. 2011) ("Of course, a plaintiff is not entitled to independent recoveries for his unseaworthiness and Jones Act negligence claims."). But when the claims are based on separate injuries, the seaman is entitled to recover under both.

Garza brought all four of the above claims and based his fourth claim on Weeks Marine's unreasonable failure to pay his maintenance and cure. Weeks Marine challenges Garza's award under this claim only. Specifically, Weeks Marine disputes that Garza was injured by its failure to pay. In response, Garza argues that his pain and suffering and mental anguish were prolonged by Weeks Marine's unreasonable failure to pay and that these injuries support his damage award. *See, e.g., Stevens v. Seacoast Co.,* 414 F.2d 1032, 1040 (5th Cir.1969) (noting that a shipowner would be liable for the resulting damages if the seaman could establish that the shipowner's failure to pay maintenance and cure "contributed in any degree to additional pain or disability or prolonged the recovery period"). He says he was injured in February 2006 but did not receive surgery until October 2007. Because the surgery ultimately decreased Garza's neck pain, Garza contends that this evidence shows he suffered twenty months of pain that would have been alleviated but for the shipowner's recalcitrance.

■ Garza correctly notes that prolonged pain and suffering and mental

9. There are narrow circumstances, not present here, in which a shipowner will not be liable for denying a seaman maintenance and cure. *See, e.g.,* 2 Robert Force & Martin J. Norris, The Law of Seamen § 26:21, at 26–46 (5th ed.2003) (explaining that a seaman will not be entitled to maintenance and cure if, before joining the vessel, the seaman "knows that he is afflicted with a disabling disease and conceals the fact and holds himself out as

fit"). A shipowner is therefore entitled to investigate a seaman's claim for maintenance and cure and require corroboration. *Morales v. Garijak, Inc.,* 829 F.2d 1355, 1358 (5th Cir.1987), *abrogated on other grounds by Guevara v. Mar. Overseas Corp.,* 59 F.3d 1496 (5th Cir.1995). But if, after investigating, the shipowner unreasonably rejects the claim, the shipowner can be liable if the failure to pay results in a personal injury. *Id.*

anguish can support an unreasonable-failure-to-pay award. But the injury is insufficient, without more, to recover damages. Garza must show that Weeks Marine's unreasonable failure to pay *caused* the injury. Here, no evidence establishes a causal connection between Weeks Marine's failure to pay and Garza's injuries. The failure to pay did not force Garza to go without necessary medical care. Weeks Marine paid for medical care for three months after the accident. It ceased paying for treatment afterwards, but treatment itself did not cease. Dr. Perez testified that he saw Garza sixteen to seventeen times between May 2006 and May 2007. On none of those occasions does the evidence show that Garza's treatment was compromised because Weeks Marine did not pay associated medical bills. And there is no evidence that Garza's treatment or recovery would have proceeded differently had Weeks Marine paid for it nor that Garza would have had surgery sooner. The length of the recovery period was a result of Dr. Perez's conservative treatment plan, not Weeks Marine's failure to pay.

█ Garza argues that accepting Weeks Marine's argument would encourage employers to avoid paying maintenance and cure because they could simply rely on other sources to provide the seaman with medical care. This argument, however, ignores remedies the law affords seamen for delay. In addition to compensatory damages for injuries caused by an employer's failure to provide maintenance and cure, a seaman can also recover punitive damages when the employer's failure to pay is willful and wanton. *See Atl. Sounding Co.*, 129 S.Ct. at 2575.[10] Thus, concerns about an employer's conscious disregard of its maintenance-and-cure duty are addressed through the remedies available to a seaman.[11]

Weeks Marine breached its duty to provide maintenance and cure, and Garza is entitled to recover his expenses. But there is no evidence that Weeks Marine's failure to pay caused Garza additional injury. *See, e.g., Cortes v. Balt. Insular Lines,* 287 U.S. 367, 373–74, 53 S.Ct. 173, 77 L.Ed. 368 (1932) ("The failure to provide maintenance or cure may be a personal injury or something else according to the consequences. If the seaman has been able to procure his maintenance and cure out of his own or his friends' money, his remedy is for the outlay, but personal injury there is none."), *superseded on other grounds by statute as recognized in Miles v. Apex Marine Corp.*, 498 U.S. 19, 33, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990). Accordingly, we reverse that portion of the court of appeals' judgment and render judgment that Garza take nothing as to that portion of his claim.

## IV. Response to the dissent

We cannot agree that Weeks Marine "failed to treat [Garza's] condition," 371 S.W.3d at 168, because doing so would require us to disregard the undisputed

---

10. We recognize that this statement is inconsistent with our decision in *Maritime Overseas Corp. v. Waiters,* 917 S.W.2d 17 (Tex.1996), in which we held that punitive damages are not recoverable under general maritime law for the willful and arbitrary failure to pay maintenance and cure. *Id.* at 17. Based on the Supreme Court's decision in *Atlantic Sounding,* however, *Waiters* may no longer be considered binding precedent. *See Penrod Drilling Corp. v. Williams,* 868 S.W.2d 294, 296 (Tex.1993) (explaining that Texas courts are obligated to follow "higher Texas courts and the United States Supreme Court" in determining the appropriate federal rule of decision).

11. This case, tried before the Supreme Court decided *Atlantic Sounding,* did not include a jury submission on punitive damages.

medical care Garza received from Dr. Montet. Weeks Marine paid for Garza's medical visits and examinations until Garza sought treatment from his personal physician. During those medical visits, Dr. Montet ordered an MRI, a CT scan, and, when the scan uncovered no abnormalities, recommended a conservative course of care. No one, not even Garza's doctors, has once suggested either that the treatment Garza received from Dr. Montet was inadequate or that more aggressive care would have diminished Garza's pain.

Because we do not accept that Dr. Montet failed to treat Garza, we also cannot agree that Garza's recovery period was prolonged during the three months he was Dr. Montet's patient. But assuming that were the case, a prolonged recovery period would not be the result of Weeks Marine's failure to pay for the medical care Dr. Montet provided. The jury was asked to award Garza damages for injuries "that resulted from *the failure to pay mainte-nance and cure*," not from improper treatment. And, as we have mentioned, Weeks Marine paid for Garza's visits to Dr. Montet, and there is no evidence, nor does Garza allege, that Dr. Montet's treatment was inadequate. *See, e.g., De Zon*, 318 U.S. at 670–71, 63 S.Ct. 814 (recognizing that doctors routinely disagree on diagnoses; a doctor's incorrect diagnosis is not necessarily negligence).

There is no evidence that Garza was injured by Weeks Marine's failure to pay for medical treatment, and the jury was not asked whether Dr. Montet's conservative treatment caused Garza pain. Thus there is no basis to remand this case for a remittitur. Because we can find no evidence that the failure to pay injured

Garza, we must render judgment that he take nothing on that theory.

## V. Garza was acting under specific orders at the time of the accident.

Weeks Marine also challenges the court of appeals' decision to render judgment against it for 100% of the negligence award. We agree, generally, that Garza's claims are governed by rules of comparative fault. 45 U.S.C. § 53.[12] At trial, the jury attributed to Garza 20% of the fault for the accident. The trial court did not reduce Garza's award by this percentage, however, because the jury found, and the court of appeals agreed, that Garza's actions fell within an exception to the comparative negligence doctrine—the "specific orders" exception. 370 S.W.3d at 394. Weeks Marine argues that there is no evidence to support the jury's finding regarding this exception. We must therefore examine the basis for an exception and compare it with the evidence in this record.

A seaman can avoid a comparative-fault reduction in a negligence award by proving that he was complying with a superior's specific orders. *See, e.g., Alholm v. Am. S.S. Co.*, 144 F.3d 1172, 1179 (8th Cir.1998) ("A seaman cannot be found comparatively negligent ... when following an order to complete a task in a specific manner."). This exception applies when the seaman had no choice but to engage in the action that the jury found contributed to the injury. *See Fashauer v. N.J. Transit Rail Operations, Inc.*, 57 F.3d 1269, 1279 (3d Cir.1995) ("[W]hen a plaintiff has no real choice, his recovery should not be reduced because he performed the task, regardless of whether

12. This provision is from the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60. The Jones Act incorporates the FELA by reference. *See* 46 U.S.C. § 30104 ("Laws of the United States regulating recovery for personal injury to, or death of, a railway employee apply to an action under this section.").

the plaintiff acted reasonably or unreasonably."). Although the Fifth Circuit originally construed this exception broadly, *see Williams*, 497 F.2d at 73 ("[A] seaman may not be contributorily negligent for carrying out orders that result in his own injury, even if he recognizes possible danger."), its application is actually quite narrow. The exception does not absolve a seaman of all negligence that results from a supervisor's directive but instead applies only when the seaman is ordered to do a specific task in a specific manner or is ordered to do a task that can be accomplished in only one way. *See Alholm*, 144 F.3d at 1179 (noting that there is no "blanket rule precluding a seaman from being found contributorily negligent when acting at the direction of a supervisor").[13] In other words, the exception applies when the seaman's only options are either to complete the task or disobey the order.

■ Applying this exception to Garza's case, the court of appeals correctly concluded that evidence supported the jury's finding that Garza was following a specific order at the time of the accident. Garza testified that while he was being trained to adjust the friction on the anchor barge, his supervisor instructed him to get tools from the *Tom James*. He testified that he could take but one route to accomplish that task, and the injury occurred at that precise location. Based on this evidence, the jury could have determined that Garza's recourse from danger was to flout his supervisor's command. Because some evidence supports the jury finding, the court of appeals correctly declined to reduce Garza's award.

## VI. Conclusion

Because no evidence supports Garza's unreasonable-failure-to-pay award, we reverse that part of the court of appeals' judgment and render judgment that Garza take nothing on that claim. We affirm the remainder of the judgment. TEX.R.APP. P. 60.2(a), (c).

Justice GUZMAN delivered a dissenting opinion, joined by Justice MEDINA and Justice LEHRMANN.

Justice GUZMAN, joined by Justice MEDINA and Justice LEHRMANN, dissenting.

In maritime law, an ill or injured seaman is entitled to cure from his employer, which the Court and the Fifth Circuit have defined as the provision of "necessary medical services."[1] 371 S.W.3d 157, 159; *Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496, 1499 (5th Cir.1995). Today, the Court effectively construes the right to necessary medical services to mean only the right to diagnosis—regardless of whether necessary medical services were provided. It is well settled in maritime jurisprudence that when an employer fails to provide cure to a seaman for an on-the-job injury and that failure prolongs or

---

13. The Ninth Circuit has expanded the specific orders exception to cover a seaman who responds to an "urgent, yet general, call to the crew for assistance." *Simeonoff v. Hiner*, 249 F.3d 883, 890 (9th Cir.2001). Because such a call is not before us, we do not express an opinion on this view.

1. The Fifth Circuit has expounded that cure is the employer's obligation "to reimburse the seaman for medical expenses he incurs" and to "take all reasonable steps to insure that the seaman who is injured or ill receives proper care and treatment." *Guevara*, 59 F.3d at 1499–1500. The Court has expounded that a "shipowner is required 'not only to pay for the seaman's maintenance and cure but to take all reasonable steps to make sure that the seaman, when he is injured or becomes sick, receives proper care and treatment.'" 371 S.W.3d at 163 (quoting GRANT GILMORE & CHARLES L. BLACK, JR., THE LAW OF ADMIRALTY § 6–13, at 310 (2d ed.1975)).

aggravates the original injury, the seaman suffers an additional injury. The well-established mechanism for recovery for that additional injury is a failure to cure claim. The Court accurately sets forth this framework but then · misapplies it. The evidence here shows a three-month delay from the time the employer's doctor offered a diagnosis but failed to provide necessary medical services until the seaman initiated treatment with his own physician. After the employer failed to treat his condition, the seaman's pain and related suffering and mental anguish led him to seek medical treatment on his own. The evidence of this pain and suffering and mental anguish during this three-month period is some evidence that the employer's failure to provide necessary medical services (*i.e.*, "cure") prolonged the original injury, and because the Court holds otherwise, I respectfully dissent.

The Court observes that a seaman such as Garza can have four claims against his employer: (1) a Jones Act negligence claim; (2) an unseaworthiness claim; (3) a claim for unpaid maintenance and cure; and (4) a claim based on failure to provide maintenance and cure (hereinafter a "failure to cure claim"). 371 S.W.3d at 168. Here, Garza brought all four claims, but only his failure to cure claim is at issue. Weeks Marine argues that Garza obtained a double recovery when the jury awarded damages for both the Jones Act negligence claim and the failure to cure claim. Specifically, Weeks Marine asserts that there is no evidence that its failure to provide cure to Garza prolonged or aggravated his injury.

The Court recites the settled rule that if there is only one injury, the seaman may recover damages under either a Jones Act negligence claim or a failure to cure claim—but the seaman is entitled to only one recovery because he suffered only one

injury in that circumstance. *Id.* at 162. If the failure to cure prolongs or aggravates the original injury, the seaman may recover under both claims (*e.g.,* the Jones Act negligence claim for the original injury and the failure to cure claim for the additional injury). *Id.* at 167–68; *Stevens v. Seacoast Co.,* 414 F.2d 1032, 1040 (5th Cir.1969) (noting that recovery may be had if failure to pay maintenance and cure "contributed in any degree to additional pain or disability or prolonged the recovery period").

To illustrate how recovery under this rule operates, I invoke two hypothetical examples. First, assume that a seaman is injured and: (1) the employer fails to provide cure; (2) it is a year before the seaman is able to obtain medical care; (3) he takes another year to reach maximum cure; and (4) that initial year delay aggravated the injury, requiring a second surgery. A Jones Act negligence claim should compensate the seaman for the initial injury: the medical expenses not including the second surgery and the pain and suffering and mental anguish for the second year. A failure to cure claim should compensate the seaman for the second injury (the employer's failure to provide cure): the second surgery and the first year of pain and suffering and mental anguish.

Now assume the same facts but that no second surgery is required. The employer's failure to provide cure did not increase the medical expenses, but the seaman nonetheless has a claim for failure to cure. The original injury satisfied any physical impact requirement for Jones Act or maritime cases. *See Gough v. Natural Gas Pipeline Co. of Am.,* 996 F.2d 763, 766 (5th Cir.1993) (describing physical injury requirement for Jones Act and maritime cases); *Stevens,* 414 F.2d at 1040. In that circumstance, the failure to cure claim

would compensate the seaman for the first year of pain and suffering and mental anguish (as there are no additional medical expenses).

The facts of this case closely align to the facts of the second hypothetical example. Weeks Marine hired Dr. Montet to treat Garza. Dr. Montet performed a CT scan and diagnosed Garza as having a contused cranium with a mild concussion and a cervical sprain, but he released Garza back to work that day with no restrictions. Approximately one month later, Dr. Montet performed an MRI on Garza but again released him to work with no restrictions. The Court characterizes these two visits and accompanying diagnostic scans as treatment. Regardless of the accuracy of that characterization, it is irrelevant. The relevant inquiry is whether the two visits and diagnosis alone were the necessary medical services (*i.e.*, cure) for Garza's condition. The record clearly indicates that diagnosis alone here was not providing necessary medical services to Garza for two reasons. First, the record is devoid of any evidence that Dr. Montet provided any necessary medical services to Garza that would improve his condition, such as recommending rest, returning Garza to work with some restrictions, prescribing medication or physical therapy, or performing spinal injections or surgery.[2] Second, the jury determined that Dr. Montet's diagnosis did not result in maximum cure. The charge defined maximum cure as "the point at which no further improvement in

the seaman's medical condition may reasonably be expected." As explained *infra*, the jury only found that Garza would reach maximum cure several months after a 17-month treatment regimen from another doctor. That is to say the jury did not believe that Dr. Montet provided necessary medical services to Garza.

Unsurprisingly, Garza's condition worsened because the medical care Weeks Marine provided during the three months following his injury wholly consisted of diagnostic scanning and a work release with no restrictions. The Court acknowledges this, noting during this time that "[e]ventually, the pain became severe." 371 S.W.3d at 160. Garza then saw Dr. Perez, who initially recommended a neurological consult, therapy and exercise and prescribed medications. After several rounds of spinal injections provided only temporary relief, Dr. Perez performed surgery on Garza after he had been under his care for 17 months. The jury found that Garza reached maximum cure only several months after the culmination of Dr. Perez's medical care.

The facts here align with the facts of the second hypothetical example addressed *supra*. The original injury caused Garza's medical expenses and the 17 months of pain and suffering and mental anguish. The second injury was the 3-month delay in Garza obtaining necessary medical services caused by Weeks Marine's failure to provide cure.[3] Accordingly, legally suffi-

2. Of course, there may be instances where diagnosis alone without even rest or work restrictions is appropriate. But because the jury found that Garza reached maximum cure only after surgery and a regimen of lesser treatments, Garza's case required more than a diagnosis alone to result in maximum cure.

3. Garza's pain and suffering and mental anguish during his three months he was not receiving treatment to improve his condition

were attributable to Weeks Marine's failure to provide cure—not the original injury. Initially, one must assume that if Weeks Marine had enabled Garza to reach maximum cure, the treatment and ultimate surgery would have occurred the same way Dr. Perez treated Garza because there is no evidence in the record to suggest otherwise. *See* 371 S.W.3d at 165 ("And there is no evidence that Garza's treatment or recovery would have proceeded differently had Weeks Marine paid for

cient evidence supports some of the damages for his failure to cure claim.

The Court believes this outcome untenable because (1) the jury was not asked to find Dr. Montet negligent, and (2) the failure to cure claim was based on Weeks Marine's failure to pay for cure, which Weeks Marine claimed it paid. Neither argument supports overturning the jury's finding for Garza on the failure to cure claim. Although the jury was not asked, and under the causes of action at issue here should not have been asked, to find Dr. Montet negligent, it was asked to determine when Garza reached maximum cure. The jury found Garza reached maximum cure only after the 17 months of treatment by Dr. Perez. Maritime jurisprudence sets out the parameters of our inquiry in this appeal: whether Weeks Marine—through Dr. Montet—enabled Garza to reach the point of no further reasonable improvement, not whether Dr. Montet was negligent.

Likewise, the Court's position that Weeks Marine satisfied its duty to provide cure by simply paying for Dr. Montet's diagnosis is misguided. Weeks Marine's payment for Dr. Montet's diagnosis did not improve Garza's condition, nor did it result in the rendition of necessary medical services in and of itself. Rather, Dr. Perez's treatment—which Weeks Marine did not pay for—did improve Garza's condition. Under even the most generous interpretation, Weeks Marine's payment for diagnosis alone is not maximum cure. Garza's condition only improved when he sought and obtained medical treatment on his own. The Court's focus on "pay" drives its conclusion that this is cure. Granted, the

jury was asked whether Weeks Marine "acted unreasonably in failing to pay maintenance and cure." But the charge instructed the jury that it may award damages for failure to pay maintenance and cure if:

1. The plaintiff was entitled to maintenance and cure;
2. It was not provided;
3. The defendants acted unreasonably in failing to provide maintenance and cure; and
4. The failure to provide the maintenance and cure resulted in some injury to the plaintiff.

As the jury necessarily found: (1) Garza was entitled to maintenance and cure; (2) it was not provided; (3) Weeks Marine acted unreasonably in failing to provide it; and (4) that failure resulted in some injury to Garza. There is some evidence in the record that Garza's injury was the three-month delay in his treatment.

I agree with the Court that there is no legally sufficient evidence here to support the failure to cure claim during Garza's 17–month treatment process. The treatment during this time period was attributable to the original injury and recoverable under the Jones Act negligence claim—not the failure to cure claim. But this should not detract from the simple fact that in the three months Dr. Montet was not providing treatment to improve Garza's condition, Garza's pain and suffering and mental anguish were attributable to the failure to provide cure. There is legally sufficient evidence supporting some of the damages for Garza's failure to cure claim.

The question then is what the disposition should be. In situations where legally

---

· it. . . ."). Had Weeks Marine treated Garza as Dr. Perez did, he would have reached maximum cure three months earlier than he actually did because he would not have had three months without necessary medical services

(*i.e.,* the three months of no treatment and 17 months of treatment when Weeks Marine failed to provide cure would have been 17 months of treatment if Weeks Marine had provided cure).

sufficient evidence supports some but not the full amount awarded, we have: (1) remanded for the court of appeals to suggest a remittitur, *Guevara v. Ferrer*, 247 S.W.3d 662, 670 (Tex.2007); (2) remanded for the trial court to determine the issue, *Ford Motor Co. v. Garcia*, 363 S.W.3d 573, 582 (Tex.2012); or (3) remanded for a new trial, *see Minn. Mining & Mfg. Co. v. Nishika Ltd.*, 953 S.W.2d 733, 740 (Tex. 1997). The most appropriate course here would be for the court of appeals to suggest a remittitur of the amount of damages in the failure to cure claim not supported by legally sufficient evidence. *See Guevara*, 247 S.W.3d at 670. Because the Court holds there is legally insufficient evidence to support the failure to cure claim, I respectfully dissent.

