In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

**NO. 09-11-00269-CV**

_____

**IN RE COMMITMENT OF STEVEN WEATHERREAD**

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 10-07-07536-CV**

**MEMORANDUM OPINION**

Steven Weatherread appeals, challenging a civil commitment that the trial court ordered after a jury found him to be a sexually violent predator. *See* Tex. Health & Safety Code Ann. §§ 841.001–.151 (West 2010 & Supp. 2012) (SVP statute). In two issues, Weatherread challenges the trial court's decision to admit portions of the testimony of the State's experts. We affirm the trial court's judgment.

In issue one, Weatherread argues the trial court erred by admitting the testimony of the State's experts, Dr. Michael Arambula and Dr. Timothy Proctor, because their testimonies were conclusory, unreliable, and lacked probative value. In issue two,

1

Weatherread asserts the trial court erred by admitting the testimony of Dr. Proctor because he utilized a definition of the term "likely" that varied from the meaning the Legislature intended that it have.

In issue one, Weatherread argues that analytical gaps exist between the data reviewed by Dr. Arambula and by Dr. Proctor and their opinions, and that the gaps are so great that their opinions are unreliable and conclusory. However, during the trial, Weatherread did not object to the admission of the testimony of Dr. Arambula or of Dr. Proctor on the basis that analytical gaps made either of their testimonies conclusory or unreliable. We conclude that Weatherread has waived his right to our review of the trial court's decision to admit the testimony of Dr. Arambula and of Dr. Proctor based on an argument first presented in his appellate brief. *See* Tex. R. Evid. 103(a)(1) (requiring a timely objection to erroneous admission of evidence); Tex. R. App. P. 33.1 (requiring that rules of error preservation be followed in order to present a complaint for appellate review). Issue one is overruled.

Nevertheless, Weatherread's issue one argument might be read to have been intended to advance a claim that the evidence is insufficient to support the trial court's judgment. An appellant can preserve error by arguing a matter that has not been specifically listed as an issue in the brief. *See Weeks Marine, Inc. v. Garza*, 371 S.W.3d 157, 162 (Tex. 2012). While Weatherread did not separately and specifically present an issue challenging the legal sufficiency of the evidence supporting the jury's findings,

2

issue one includes an argument that the experts' conclusory opinions are insufficient evidence to support a judgment.[1] We construe Weatherread's brief to include a challenge that the evidence is legally insufficient to support the trial court's judgment.

When reviewing the legal sufficiency of the evidence supporting an SVP commitment, we assess all the evidence in the light most favorable to the verdict to determine whether any rational trier-of-fact could find, beyond a reasonable doubt, the elements required for commitment under the SVP statute. *In re Commitment of Mullens*, 92 S.W.3d 881, 885 (Tex. App.—Beaumont 2002, pet. denied). In explaining how the evidence is insufficient in Weatherread's case, Weatherread faults Dr. Arambula for failing to take blood tests and magnetic resonance imaging studies, and for failing to conduct a collateral investigation or to consult with colleagues. However, the record does not show that these types of tests and investigations are components of psychiatric evaluations for SVP commitments.

The record reflects that Dr. Arambula reviewed the types of information generally relevant to a determination of whether a person is a sexually violent predator. He interviewed Weatherread and examined Weatherread's records, which included evaluations conducted by mental health professionals. Dr. Arambula used the DSM-IV to diagnose Weatherread with paraphilia disorder not otherwise specified with features of

---

[1]Weatherread also argued that Dr. Proctor's and Dr. Arambula's testimony amounted to legally insufficient evidence in his motion for new trial, which supports the inference that he may have intended to raise a legal sufficiency challenge on appeal.

pedophilia, which Dr. Arambula explained is a chronic, lifelong condition. Dr. Arambula also diagnosed Weatherread with "personality disorder not otherwise specified with feature of antisocial." According to Dr. Arambula, a personality disorder is a permanent condition that allows Weatherread to believe that society is against him and that he has not done anything wrong. Dr. Arambula testified that such tendencies lead people with this problem to place themselves in high-risk situations. In Dr. Arambula's opinion, Weatherread has a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

Using evidence-based support, Dr. Arambula presented a professional opinion expressing "a reasoned judgment based upon established research and techniques for his profession and not the mere *ipse dixit* of a credentialed witness." *See In re Commitment of Day*, 342 S.W.3d 193, 206 (Tex. App.—Beaumont 2011, pet. denied). On this record, we cannot say that Dr. Arambula's testimony lacks probative value. *See Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 233 (Tex. 2004).

Weatherread lodges a similar argument regarding Dr. Proctor's testimony, although he notes that Dr. Proctor placed more reliance on Weatherread's actuarial testing than Dr. Arambula did when forming his opinions. Dr. Proctor stated that Weatherread's score of 2 on the Static-99R falls in the low, moderate range, while his score of 8 on the MnSOST-R falls in the high range, which is the second highest of four levels of risk on that scale. Dr. Proctor testified that he considered Weatherread's history,

4

which tends to show that Weatherread has had a sexual interest in minors, had been convicted of sexual offenses both before and after receiving sex offender treatment, had committed offenses while on community supervision, had a poor history of having complied with sex offense-related supervision requirements, had committed sexual offenses against people who were not related to him, had used force during the sexual offenses, had been sued for sexual harassment, and that he tended to be antisocial and tended to engage in minimization and to use denial.

In reaching his conclusions, Dr. Proctor also considered a number of factors that would tend to decrease a person's risk of reoffending. Nevertheless, Dr. Proctor testified that Weatherread's risk factors outweighed the factors that were favorable with respect to whether he would commit another sexually related offense. Dr. Proctor diagnosed Weatherread with "paraphilia not otherwise specified with a rule-out consideration of pedophilia attracted to females nonexclusive type[]" and "personality disorder not otherwise specified that includes antisocial personality traits." According to Dr. Proctor, Weatherread's risk factors, together with his classifications under the DSM, support his conclusion that Weatherread has a behavioral abnormality that makes him likely to commit a sexually violent offense.

Weatherread argues that Dr. Proctor manipulated the result of the actuarial testing. However, the record reflects that Dr. Proctor explained that actuarial measures of recidivism, such as the Static-99R, use research-based risk factors that provide a level of

risk, and that he considered these measures in assessing Weatherread's risk of recidivism. Dr. Proctor explained that he also considers risk factors and protective factors that may not be reflected in the Static-99R. In summary, the record reflects that Dr. Proctor described the factors he considered, and explained why he felt these factors significant. Weatherread's claim that Dr. Proctor's testimony amounts to no evidence because it contains significant analytical gaps is not supported by the record. We overrule issue one.

In issue two, Weatherread complains that Dr. Proctor utilized an improper definition of the term "likely" in formulating his opinions,[2] which served to lower the State's burden of proof. Before Dr. Proctor testified, Weatherread objected on the basis that Dr. Proctor had utilized an improper definition of the term "likely" in forming his opinions. The trial court overruled Weatherread's objection. *See* Tex. R. Evid. 103(a)(1) ("When the court hears objections to offered evidence out of the presence of the jury and rules that such evidence be admitted, such objections shall be deemed to apply to such evidence when it is admitted before the jury without the necessity of repeating those objections.").

In describing the risk that a person will re-offend, Dr. Proctor told the jury that to him the word "likely" means "probable[]" and "that something that is probable is beyond

[2]The term "likely" is not defined in the SVP statute. *See* Tex. Health & Safety Code Ann. § 841.002 (West Supp. 2012) (Definitions). However, the SVP statute uses the term "likely" in describing one of the conditions that is required for a person to be considered to be a sexually violent predator, as the statute requires that the person be one who "suffers from a behavioral abnormality that makes the person likely to engage in a predatory act of sexual violence." *Id.* § 841.003(a)(2) (West 2010) (Sexually Violent Predator).

6

a mere possibility for potential for harm." On cross-examination, Dr. Proctor admitted that the word "likely" is not defined in the SVP statute and that the ultimate issue of whether a person has a behavioral abnormality cannot be measured empirically.

"'When words are not specifically defined by the Legislature, they are to be understood as ordinary usage allows, and jurors may freely read the statutory language to have *any* meaning which is acceptable in common speech.'" *In re Commitment of Kirsch*, No. 09-08-00004-CV, 2009 WL 2045238, at *6 (Tex. App.—Beaumont July 16, 2009, pet. denied) (mem. op.) (quoting *Teer v. State*, 923 S.W.2d 11, 19 (Tex. Crim. App. 1996)). Bryan Garner provides this explanation of the term:

> **[L]ikely** has different shades of meaning. Most often it indicates a degree of probability greater than five on a scale of one to ten. The probability is, of course, greater when the word is preceded by a qualifier such as *quite*, *very*, or *extremely*. But it may also refer to a degree of possibility that is less than five on that same scale.

BRYAN A. GARNER, A DICTIONARY OF MODERN LEGAL USAGE 530 (2d ed. 1995). Webster's definition of the term "likely" indicates that it includes, among others, these meanings:

> **1:** of such a nature or so circumstanced as to make something probable [examples omitted] **2a:** seeming to justify belief or expectation [examples omitted] **b:** having a better chance of existing or occurring than not **:** having the character of a probability [examples omitted].

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1310 (2002). The Texas Supreme Court has explained that "the import of predisposition and likelihood is exactly the same:

7

increased risk." *In re Bohannan*, No. 10-0605, 2012 Tex. LEXIS 734, at *16 (Tex. Aug. 31, 2012).

Dr. Proctor's explanation of the term "likely" is consistent with how dictionaries commonly define that term and with the *Bohannan* Court's construction of the statute; therefore, the trial court could reasonably determine that Dr. Proctor's opinion concerning Weatherread's risk of recidivism was admissible as relevant evidence. *See* Tex. R. Evid. 402 ("All relevant evidence is admissible, except as otherwise provided by Constitution, by statute, by these rules, or by other rules prescribed pursuant to statutory authority.").

We conclude the trial court did not abuse its discretion in overruling Weatherread's objection to the admission of Dr. Proctor's testimony. We overrule issue two, and we affirm the trial court's judgment.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on September 28, 2012
Opinion Delivered November 29, 2012
Before Gaultney, Kreger, and Horton, JJ.