# Supreme Court of Texas

No. 23-0010

Daniel Walker and Kristen Walker,

*Petitioners*,

v.

Baptist St. Anthony's Hospital and Rhodesia Castillo, M.D.,

*Respondents*

On Petition for Review from the
Court of Appeals for the Seventh District of Texas

JUSTICE BLAND, joined by JUSTICE BOYD, concurring.

Honoring our Constitution's promise of open courts and an opportunity to be heard, we endeavor to consider every appeal on its merits. TEX. CONST. art. I § 13; *see Sax v. Votteler*, 648 S.W.2d 661, 664 (Tex. 1983) ("[Section 13] is, quite plainly, a due process guarantee."). We construe briefs liberally, disdain immaterial briefing waiver, and elevate justice over procedural deficiencies of many stripes.[1]  For that

---

[1] *E.g.*, *Horton v. Stovall*, 591 S.W.3d 567, 570 (Tex. 2019) ("The interests of justice and fair play demand that cases be decided on the merits when technical deficiencies in appellate briefs 'can be easily corrected.'" (quoting *Silk v. Terrill*, 898 S.W.2d 764, 766 (Tex. 1995))); *Willis v. Donnelly*, 199 S.W.3d

reason, when error exists in the reasoning of the court of appeals, a respondent is entitled to resolution of dispositive unaddressed issues, either by our Court or on remand. *Stanglin v. Keda Dev. Corp.*, 713 S.W.2d 94, 95 (Tex. 1986), *op. on reh'g*. "We have the option of '(1) examining the points not considered by the court of appeals in order to determine whether any will support affirmance of that court's judgment, or (2) remanding the cause to the court of appeals for it to pass on those points.'" *Id.* (quoting *Roark v. Allen*, 633 S.W.2d 804, 811 (Tex. 1982)).

There is no third way, such as the path the Court takes in this case: the rejection of two never-considered appellate challenges with no more explanation than it need not do so "in the interest of judicial economy." *Cf. Indus. Specialists, LLC v. Blanchard Refin. Co. LLC*, 652 S.W.3d 11, 23 (Tex. 2022) (Busby, J., dissenting) ("For many years, this Court has demonstrated its commitment to the efficient administration of justice, transparency, and a substance-over-form approach to procedure. Regrettably, the plurality and concurrence sound a retreat on all these fronts today, allowing courts of appeals to avoid hearing permissive appeals at their pleasure and with no explanation so long as their standard-form denials recite the following pass-phrase: 'the petition fails to establish each requirement.'").

Judicial economy is meaningful; inefficient justice is hardly justice at all. In reading the Court's opinion, however, the respondents

---

262, 270 (Tex. 2006) ("[A] party should not lose its right to appeal based on an unduly technical application of procedural rules."); *Weeks Marine, Inc. v. Garza*, 371 S.W.3d 157, 162 (Tex. 2012) (construing briefs reasonably and liberally to avoid the loss of a party's rights).

have no assurance that their unconsidered issues—those the court of appeals did not reach—were afforded any application of the law to the facts. Such an omission occludes the transparency of our legal system and disappoints the reasonable expectations of parties seeking redress. *See id.* at 28 (citing *In re Columbia Med. Ctr. of Las Colinas, Subsidiary, L.P.*, 290 S.W.3d 204, 213 (Tex. 2009)).

We may decide how judicial economy is best served. *RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 124 (Tex. 2018) ("When presented with an issue the court of appeals could have but did not decide, we may either remand the case or consider the issue ourselves."). When the remaining issues are fully briefed and straightforward, as the issues in this case are, we often address them in the first instance.[2] But

---

[2] *See, e.g.*, *Baty v. Futrell*, 543 S.W.3d 689, 697 (Tex. 2018) ("Although the court of appeals did not address the report's sufficiency as to breach and causation, the parties argued those issues here, and we will address them in the interest of judicial economy."); *Pedernal Energy, LLC v. Bruington Eng'g, Ltd.*, 536 S.W.3d 487, 495 (Tex. 2017) ("The parties have briefed and argued the issue here, so in the interest of judicial economy we will address it rather than remanding to the court of appeals."); *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 97 (Tex. 2012) ("The court of appeals did not address the Hospital's claim of immunity. Rather than remanding the case to the court of appeals for it to do so, however, we address the issue in the interest of judicial economy."). The Court cites inapposite cases in which the underlying courts of appeal had discretionary review or decided the issue on the merits, and we held that decision to contain no reversible error. *See Indus. Specialists*, 652 S.W.3d at 19 (Tex. 2022) (plurality opinion of Boyd, J.) ("The opinion addressed the only issue raised and necessary to final disposition of the [permissive] appeal, as rule 47.1 requires, and advised the parties of the court's decision to refuse the appeal and the basic reasons for it, as rule 47.4 requires.") (internal quotations and original brackets omitted); *Virlar v. Puente*, 664 S.W.3d 53, 66 (Tex. 2023) (declining to discuss an issue further when "the court of appeals thoroughly reviewed" it); *Columbia Valley Healthcare Sys., L.P. v. A.M.A. ex rel. Ramirez*, 654 S.W.3d 135, 141 n.3 (Tex. 2022) (the court of appeals' reasoning presented

when we elect not to do so, the proper course is to remand the remaining issues to the court of appeals, which must hand down a written opinion that addresses any issue raised and necessary to a final disposition. TEX. R. APP. P. 47.1; *see also West v. Robinson*, 180 S.W.3d 575, 577 (Tex. 2005) (explaining that "[Rule 47.1] is mandatory, and the courts of appeals are not at liberty to disregard it").

I join the court's opinion regarding causation. I write separately to address the two issues the court of appeals did not reach, because this Court neither remands these issues nor addresses them in its opinion.

In addition to the causation challenge that the court of appeals sustained, the health care respondents present two issues the court of appeals never reached: (1) the proffering physicians are not qualified to offer the opinions at the heart of this appeal; and (2) the reports fail to adequately explain the applicable standard of care and breach for the hospital nurses. TEX. R. APP. P. 53.4 (a party may request that the Court consider issues unaddressed in the court of appeals' opinion). Because these alternative bases for affirming the court of appeals' judgment also lack merit, I concur in the Court's judgment.

**I**

The health care respondents urge that Drs. Tappan and Null are not qualified to proffer opinions on causation sufficient to comply with

---

no reversible error and further discussion would be unimportant to the jurisprudence of the State); *Regent Care of San Antonio, L.P. v. Detrick*, 610 S.W.3d 830, 839 (Tex. 2020) (same). In contrast to these cases, no appellate court has addressed two issues necessary to the disposition of this appeal. Proper stewardship of scarce judicial resources cannot be to withhold them entirely.

4

Chapter 74 of the Civil Practice and Remedies Code. TEX. CIV. PRAC. & REM. CODE § 74.351(a). Our precedent on witness qualification is spartan and easily understood. *See Broders v. Heise*, 924 S.W.2d 148 (Tex. 1996). Chapter 74 imports its expert criteria from the Texas Rules of Evidence. TEX. CIV. PRAC. & REM. CODE. § 74.351(r)(5)(C). The relevant rule provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue.

TEX. R. EVID. 702.

Not every medical doctor is qualified to testify on every medical issue. *Broders*, 924 S.W.2d at 152. The offering party must establish that the witness has "knowledge, skill, experience, training, or education" pertaining to the specific issue before the court "which would qualify the expert to give an opinion on that particular subject." *Id.* at 153. However, the inquiry is not myopic. *See Larson v. Downing*, 197 S.W.3d 303, 305 (Tex. 2006) (explaining that "expert qualifications should not be too narrowly drawn").

Relevant here, testimony on the cause of an injury to the brain is not categorically restricted to neurosurgeons. *Broders*, 924 S.W.2d at 153. Rather, a trial court must examine whether the witness has sufficient expertise through education, training, and experience such that the witness's opinion in the relevant subject area rises "above mere speculation to offer genuine assistance to the jury." *Id.*

5

Ample evidence supports the trial court's determination that Dr. Tappan possesses sufficient qualifications to proffer an opinion as to the cause of the injuries in this case. Dr. Tappan is a licensed physician in California with an active clinical practice that includes obstetrics and gynecology. He has experience diagnosing, evaluating, and managing pregnant patients near delivery, including managing patients with non-reassuring fetal heart-rate patterns. He states that he is "aware of the indications and techniques for operative vaginal delivery and cesarean section and the prevention and management of fetal head impaction in the maternal pelvis at the time of cesarean delivery."

The health care respondents dispute whether Dr. Tappan is qualified to opine on the causes of neurological injuries to newborns. In doing so, they impermissibly restrict the inquiry at this early stage of the proceedings, which do not subject an expert's stated qualifications to substantive investigation or cross-examination. *See id.* ("Our holding does not mean that only a neurosurgeon can testify about the cause in fact of death from an injury to the brain . . . ."). The injury in this case allegedly occurred as a result of breaches of the standard of care during birth. An obstetrician trained in preventing neurological injuries of the type alleged to have occurred here may have experience in assessing those injuries, and Dr. Tappan indicates that he has such experience. A reasonable court could determine that Dr. Tappan's training and experience qualify him to offer an opinion as to the cause of the alleged fetal injury in this case, when combined with Dr. Null's report.

Dr. Null has experience managing hundreds of patients with birth asphyxia. His research focused on neonatal respiratory problems.

6

He headed several pediatric care units and was the assistant chief of neonatology at Wilford Hall USAF Medical Center. As Dr. Null had extensive experience with both newborns and birth asphyxia, his report sufficiently indicates that he is qualified to proffer an opinion as to the alleged cause of the injury in this case.

Taking the two reports together, there is no basis to conclude that the trial court acted in "an arbitrary or unreasonable manner" in determining Drs. Tappan and Null were sufficiently qualified to testify on causation. *See Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002); TEX. CIV. PRAC. & REM. CODE § 74.351(i) (explaining that "a claimant may satisfy any requirement of this section for serving an expert report by serving reports of separate experts regarding different physicians or health care providers or regarding different issues arising from the conduct of a physician or health care provider").

## II

The health care respondents also contend that the expert reports inadequately address the applicable standard of care and breach of that standard by the hospital nurses. Chapter 74 requires that expert reports provide a fair summary of the applicable standard of care. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(a), (l), (r)(6). Identifying the proper standard of care is "critical," as a breach of duty cannot be determined "absent specific information about what the defendant should have done differently." *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 880 (Tex. 2001). The standard focuses on poor conduct, not poor results. *See Baty*, 543 S.W.3d at 696 (approving

7

a report identifying specific conduct and opining that it fell below the standard of care).

Dr. Tappan explained with specificity his view as to what the nurses should have done differently. For example, he states that the nurses should have used proper monitoring equipment, recorded critical pressure-change data, properly adjusted oxytocin, and reported problems to their superiors when they appeared. Dr. Tappan references a hospital protocol, signed by Dr. Castillo, as part of the basis for these standards. *See Bowie*, 79 S.W.3d at 52 (requiring the expert's opinion to be contained within the "four corners" of the report). While "a company's internal policies alone do not determine the governing standard of care," they may be evidence of one. *See FFE Transp. Servs., Inc. v. Fulgham*, 154 S.W.3d 84, 92 (Tex. 2004) (internal quotation marks omitted); *Fence v. Hospice in the Pines*, 4 S.W.3d 476, 481 (Tex. App.—Beaumont 1999, pet. denied) ("We may also look to Hospice's internal policies for evidence regarding the standard of care; however, those policies alone do not determine the governing standard of care.").

Nurse Beach's expert opinion combines with Dr. Tappan's to elucidate the standard of care, noting that a reasonably prudent nurse should "apply a fetal scalp electrode when the fetal heart rate signal was intermittent," and that the nurses failed to do so here. She seconded Dr. Tappan's assertion that nurses should "proceed up the chain of command after the attending physician . . . was no longer present at the hospital while Pitocin was being administered and the fetal heart rate revealed a non-reassuring pattern." Read together, the trial court reasonably could determine that the testimony of Dr. Tappan and Nurse

8

Beach sufficiently provided the applicable standard of care and breach for the hospital nurses. *See* TEX. CIV. PRAC. & REM. CODE § 74.351(i) ("Nothing in this section shall be construed to mean that a single expert must address all liability and causation issues with respect to all physicians or health care providers or with respect to both liability and causation issues for a physician or health care provider.").

\*　　\*　　\*

Judicial efficiency is not a proxy for shortcuts—haphazardly placing issues on appeal into a new category deemed unworthy of an appellate decision at any level. Having resolved the alternate grounds necessary to the Court's disposition, I join the Court's judgment remanding the case to the trial court for further proceedings.

　　　　　　　　　　　　　　　　　　　　Jane N. Bland
　　　　　　　　　　　　　　　　　　　　Justice

**OPINION FILED:** December 13, 2024

9