**Reversed and Rendered in Part, Affirmed in Part, and Majority and Concurring Opinions filed May 31, 2018.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-17-00220-CV

---

### JELINIS, LLC, Appellant

### V.

### S. BRUCE HIRAN AND HUNG N. YI, Appellees

---

**On Appeal from the 151st District Court**
**Harris County, Texas**
**Trial Court Cause No. 2017-06257**

---

### O P I N I O N

Jelinis, LLC appeals a temporary injunction order in favor of appellees S. Bruce Hiran and Hung N. Yi. Jelinis argues that the trial court erred by enjoining it from (1) evicting Hiran and Yi because they pleaded no cause of action against Jelinis; and (2) taking legal action in the justice court to evict Hiran and Yi because they failed to show that "the justice court was without jurisdiction to determine possession." We reverse and render in part and affirm in part.

BACKGROUND

Hiran signed a Texas Home Equity Note on June 6, 2006, in the amount of $800,000 payable to Long Beach Mortgage Company. On the same day, Hiran and his wife Yi signed a Texas Home Equity Security Instrument confirming that the loan was secured by residential real property located at 4132 Lehigh Avenue in Houston, Texas. The note and deed of trust were later transferred to Deutsche Bank National Trust Company. Select Portfolio Servicing, Inc. acted as the loan servicer.

Appellees defaulted on their loan in October 2012. Select Portfolio sent notices of default in December 2012 and May 2013. Appellees ignored the notices Select Portfolio sent them. Deutsche Bank, as trustee, in trust for registered holders of Long Beach Mortgage Loan Trust 2006-10, filed an Application for Home Equity Foreclosure Order pursuant to Texas Rule of Civil Procedure 736 on January 22, 2014. Deutsche Bank nonsuited the action and filed suit in the 270th District Court on September 8, 2014, seeking a declaratory judgment and an order authorizing foreclosure.

Deutsche Bank filed a traditional summary judgment motion, contending that (1) it is entitled to a declaration of its right to foreclose on appellees' home and to an order authorizing foreclosure because its summary judgment evidence established that a debt exists, the debt is secured by a lien for a home equity loan, a default under the note and deed of trust exists, and the requisite notices to cure the default have been provided to appellees; and (2) appellees should not be allowed to deny executing the loan documents because Hiran refused to testify at his deposition regarding "any issues relating to whether he signed the applicable loan documents and refused to provide any handwriting exemplars, based on his assertion of the Fifth Amendment."

The 270th District Court granted Deutsche Bank's summary judgment motion

and signed a Final Judgment for Declaratory Relief and Order Authorizing Foreclosure on December 3, 2015. This judgment (1) disposed of all claims; (2) awarded "an *in rem* Judgment" against appellees authorizing a non-judicial foreclosure sale of appellees' home "pursuant to the terms and conditions of the subject Texas Home Equity Security Instrument and TEX. PROP CODE §51.002;" and (3) ordered that the final judgment "serves as an Order of Foreclosure of a Home Equity Lien."

Deutsche Bank sold the home at a foreclosure sale to Jelinis on December 6, 2016. Jelinis filed a forcible detainer suit regarding the home on January 12, 2017.

Appellees filed suit in the 151st District Court on January 30, 2017, naming as parties Long Beach Mortgage Company, Deutsche Bank, and Jelinis, and alleging that the "actions committed by Long Beach Mortgage Company" constitute statutory fraud and breach of contract, and that the "actions committed by Deutsche Bank" constitute common law fraud and breach of contract. Appellees alleged that, "although their signatures appear to be valid, certain pages of the Note and Deed of Trust must have been switched by representatives of Long Beach Mortgage Company . . . because [appellees]' Home Equity Loan was a fixed rate of 2% interest and, instead, the Note and Deed of Trust attached as exhibits to the Foreclosure Lawsuit are purported to be an adjustable rate note at 7.975% interest."

Appellees further alleged that "the exhibits which are the legal basis for Deutsche Bank's being awarded a judgment authorizing them [sic] to sell [appellees]' Property at a foreclosure sale are fraudulent; therefore, the foreclosure sale of [appellees]' Property should be deemed void and rescinded. Moreover, [appellees] allege[d] that the Home Equity Loan itself was fraudulent as a result of Long Beach Mortgage's representatives switching the loan documents unbeknownst

3

to [appellees]; therefore, [appellees]' home equity loan should be deemed void ab initio."

Appellees requested that the trial court (1) issue a temporary restraining order and then a temporary injunction enjoining Jelinis from selling appellees' home "as well as from taking any legal action to evict [appellees];" (2) enter a judgment in favor of appellees "to rescind the foreclosure sale of" appellees' home and "to declare the home equity loan dated June 06, 2006 between [appellees] as well as Long Beach Mortgage Company as void ab initio;" and (3) enter a judgment against Long Beach Mortgage Company and Deutsche Bank for actual and exemplary damages and attorney's fees.

Attached to appellees' petition was Hiran's affidavit in which he stated in pertinent part:

2. The subject matter of this lawsuit is the real property and the improvements thereon located at 4132 Lehigh Avenue, Houston, TX 77005 (the "Property").

3. The Property was owned by my wife Hung N. Yi and I on June 06, 2006 on which date we entered into a Home Equity Loan. During the process of entering into the Home Equity Loan, we executed a Texas Home Equity Note ("Note") in the amount of $800,000 which was payable to Long Beach Mortgage Company ("Long Beach"). In addition, we executed a Texas Home Equity Security Instrument ("Deed of Trust").

4. . . . the Note and Deed of Trust were subsequently transferred to Deutsche Bank National Trust . . . .

5. During the term of the Note, we began to receive notices that we were past due on the payments of the Note. We did not understand how that could be true since we were making our payments on the Note in full and in a timely manner. Accordingly, we expected that the notices must be a clerical error which will be remedied in due course. As such, we ignored the delinquency notices which we received from SPS.

4

6. Due to the nature and extent of Plaintiffs' perceived delinquency, Deutsche Bank filed an Application for Home Equity Foreclosure . . . [i]n the 270th Judicial District Court of Harris County, Texas (the "Foreclosure Lawsuit").

7. The Foreclosure Lawsuit culminated in a Final Judgment for Declaratory Relief and Order Authorizing Foreclosure and the Property was sold by Deutsche Bank to Jelinis, LLC ("Jelinis") at a foreclosure sale on December 06, 2016.

8. During the course of investigating this lawsuit, I informed my legal counsel that we did not execute the Note and Deed of Trust which were attached as exhibits to the Foreclosure Lawsuit. Instead, I assert that, although our signatures appear to be valid, certain pages of the Note and Deed of Trust must have been switched by representatives of Long Beach Mortgage Company ("Long Beach Mortgage") because our Home Equity Loan was a fixed rate of 2% interest and, instead, the Note and Deed of Trust attached as exhibits to the Foreclosure Lawsuit are purported to be an adjustable rate note at 7.975% interest.

The trial court granted appellees' request for a temporary restraining order and set a hearing on appellees' temporary injunction request. Appellees nonsuited their claims against Deutsche Bank without prejudice on February 22, 2017.

Jelinis filed an Objection to Plaintiff's Request for Temporary Injunction on February 23, 2017, arguing that the trial court should not enjoin the justice court from exercising its jurisdiction to hear Jelinis's forcible detainer suit. Jelinis argued that the justice court only loses jurisdiction if "the right to possession is so interrelated with title so as to make a determination of title necessary before a determination of possession can be made." According to Jelinis "there is a way to determine the issue of possession without reaching the merits of title" because the "foreclosed deed of trust created a tenancy-at-sufferance upon foreclosure" and appellees as tenants at sufferance "may be removed by a writ of possession."

The trial court held a hearing on February 24, 2017. Hiran testified that the

note and deed of trust introduced at the hearing and in the 270th District Court proceeding were not the documents he signed because the documents reference an adjustable interest rate of 7.975 percent and his home equity loan was for a fixed interest rate of 2.25 percent. Hiran, who is an attorney, testified that it is "typical that a contract that was entered into as a fraudulent transaction would be deemed void in [his] legal opinion." Hiran also stated that, in his legal opinion, he believed appellees are in "imminent danger of irreparable harm as the result of the forceful detainer lawsuit that's currently pending in JP court." But Hiran acknowledged that the signature on the documents "appears to be" his signature and that he did not have a copy of the note and deed of trust he and his wife signed at closing in 2006.

At the conclusion of the hearing, the trial court instructed the parties to file briefs addressing the issue of res judicata "in conjunction with the element of a temporary injunction that is the likelihood of success on the merits," so that the court could "take a look at what actually happened in the 270th, what the proceedings were and whether they do have preclusive effect at all in this lawsuit and, if so, to what extent." Jelinis filed a Brief in Opposition to Temporary Injunction as requested by the trial court. In its brief, Jelinis argued that appellees' claims in "this lawsuit were compulsory counterclaims arising out of the same subject matter as the lawsuit brought by Deutsche Bank on September 8, 2014," and, therefore, are barred by res judicata.

The trial court signed an order granting a temporary injunction on March 10, 2017, enjoining Jelinis from selling appellees' home and from taking any legal action to evict appellees, including pursuing Jelinis's forcible detainer suit in justice court. The court also stated in its order that it "finds that the final relief granted in the lawsuit in the 270th District Court was only in rem pursuant to TRCP 735 and therefore likely does not have preclusive effect on [appellees'] claims in this suit as

6

a matter of law." Jelinis filed a timely interlocutory appeal.[1]

## ANALYSIS

Jelinis argues in two issues that the trial court erred by enjoining it from (1) evicting appellees because they pleaded no cause of action against Jelinis; and (2) taking legal action in the justice court to evict appellees because they failed to show that "the justice court was without jurisdiction to determine possession."

## I.    Standard of Review

A temporary injunction is an extraordinary remedy and does not issue as a matter of right. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002) (op. on reh'g). To obtain a temporary injunction, an applicant must plead and prove three specific elements: (1) a cause of action against the defendant; (2) a probable right on final trial to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Id*.

We generally review a district court's grant of a temporary injunction for an abuse of discretion. *Pinnacle Premier Props., Inc. v. Breton*, 447 S.W.3d 558, 562 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (op. on reh'g) (citing *McGlothlin v. Kliebert*, 672 S.W.2d 231, 232 (Tex. 1984)). When consideration of evidence is required, we view it in the light most favorable to the trial court's order, indulging every reasonable inference in favor of the trial court's determination. *LasikPlus of Tex., P.C. v. Mattioli*, 418 S.W.3d 210, 216 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

---

[1] Section 51.014(a)(4) of the Civil Practices and Remedies Code specifically provides for an interlocutory appeal from an order granting a temporary injunction. Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(4) (Vernon 2017) ("A person may appeal from an interlocutory order of a district court, county court at law, statutory probate court, or county court that . . . grants or refuses a temporary injunction . . . .").

"Although an abuse of discretion does not occur when the trial court heard conflicting evidence and substantive, probative evidence reasonably supports the trial court's decision, we will apply a de novo standard of review when the issue turns on a pure question of law." *Pinnacle Premier Props., Inc.*, 447 S.W.3d at 562. Subject matter jurisdiction is a question of law. *Espinoza v. Lopez*, 468 S.W.3d 692, 695 (Tex. App.—Houston [14th Dist.] 2015, no pet); *Maxwell v. U.S. Bank Nat'l Ass'n*, No. 14-12-00209-CV, 2013 WL 3580621, at *2 (Tex. App.—Houston [14th Dist.] July 11, 2013, pet. dism'd w.o.j.) (mem. op.).

## II.    Waiver

Before we analyze Jelinis's challenge of the trial court's temporary injunction order, we address appellees' request to strike Jelinis's appellate brief because the "brief lacks a section pertaining to the Issue Presented or Presentment of the Issues" as required in Texas Rule of Appellate Procedure 38.1(f).

Appellees do not cite any case in which a court has struck an appellate brief because a party failed to include an "Issues Presented" section in its brief. Instead, appellees rely on *White v. Harvest Credit Management V*, No. 14-04-00349-CV, 2004 WL 2297367 (Tex. App.—Houston [14th Dist.] Oct. 14, 2004, no pet.) (per curiam) (mem. op.), to support their request to strike. But *White* is inapplicable.

In *White*, this court struck appellant's brief only after (1) appellant failed to timely file a brief pursuant to Texas Rule of Appellate Procedure 38.6; (2) appellant failed to file a motion for extension of time; (3) this court informed appellant that it would dismiss his appeal for want of prosecution unless he filed a brief; (4) appellant filed a letter with this court explaining that he had filed a brief in the trial court and also "attached a copy of the document he refer[ed] to as a brief that he filed" in the trial court; (5) this court informed appellant that his "letter d[id] not comply with the requirements for briefs contained in the Texas Rules of Appellate Procedure" 9.4

and 38.1 and granted appellant an extension of time to file a brief that conforms to the rules; (6) "appellant tendered a brief that did not comply with the Texas Rules of Appellate Procedure;" (7) this court returned the brief to appellant for correction; (8) "appellant submitted another nonconforming brief, which was also returned for correction;" and (9) appellant then filed a brief that complied with the rules of form but failed to comply with the briefing requirements set forth in Rule 38.1, and "[m]ost significantly, appellant . . . failed to make any legal arguments to support reversal of the judgment, and the brief contain[ed] no citations to the record or to legal authorities." *Id*. at \*1.

Here, Jelinis's brief contains every section listed in Rule 38.1, except for an "Issues Presented" section. Jelinis presented in the body of its brief "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." *See* Tex. R. App. P. 38.1(i).

We deny appellees' request to strike Jelinis's appellate brief for failure to include an "Issues Presented" section in its appellate brief. *See Weeks Marine, Inc. v. Garza*, 371 S.W.3d 157, 162 (Tex. 2012); *Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008) (per curiam); *Verburgt v. Dorner*, 959 S.W.2d 615, 616-17 (Tex. 1997).

Having rejected appellees' request to strike Jelinis's brief, we now turn to Jelinis's arguments challenging the trial court's order enjoining Jelinis from taking legal action in the justice court via a forcible detainer suit to evict appellees.

## III. Justice Court Jurisdiction

We begin by addressing Jelinis's contention in its second issue that the "trial court erred in enjoining [Jelinis] when there was no showing that the justice court was without jurisdiction to determine possession."

Jelinis contends that the justice court has jurisdiction over its forcible detainer

case and a district court may not enjoin a justice court from hearing a forcible detainer case if the justice court does not have to make a determination regarding title. According to Jelinis, the justice court can determine possession without determining title because the foreclosed deed of trust created a tenancy-at-sufferance upon foreclosure.

Jurisdiction to hear a forcible detainer action is expressly given to the justice court of the precinct where the property is located. *Pinnacle Premier Props., Inc.*, 447 S.W.3d at 562; *see* Tex. Prop. Code Ann. § 24.004 (Vernon 2000). A justice court has exclusive jurisdiction to decide the issue of immediate possession, which may not be infringed upon as long as the justice court determines only possession. *Pinnacle Premier Props., Inc.*, 447 S.W.3d at 562; *Rice v. Pinney*, 51 S.W.3d 705, 713 (Tex. App.—Dallas 2001, no pet.). Although a justice court has exclusive jurisdiction to hear a forcible detainer action, a district court may enjoin the exercise of the justice court's jurisdiction in a forcible detainer action when there is a showing that the justice court is without jurisdiction to proceed in the cause or the defendant has no adequate remedy at law. *McGlothlin*, 672 S.W.2d at 232; *Pinnacle Premier Props., Inc.*, 447 S.W.3d at 562.

The only issue to be resolved in a forcible detainer action is the right to immediate possession of property; the merits of title are not adjudicated. *Espinoza*, 468 S.W.3d at 695; *Yarbrough v. Household Fin. Corp. III*, 455 S.W.3d 277, 280 (Tex. App.—Houston [14th Dist.] 2015, no pet.). Justice courts lack jurisdiction to adjudicate title disputes or determine who has title to land. *Espinoza*, 468 S.W.3d at 695; *Yarbrough*, 455 S.W.3d at 280.

When there are issues concerning both title and possession, the issues may be litigated in separate proceedings in different courts with appropriate jurisdiction. *Espinoza*, 468 S.W.3d at 695; *Yarbrough*, 455 S.W.3d at 280. But when a forcible

10

detainer action presents a genuine issue of title so intertwined with the issue of possession that a trial court would be required to determine title before awarding possession, then a justice court lacks jurisdiction to resolve the matter. *Yarbrough*, 455 S.W.3d at 280; *see Pinnacle Premier Props., Inc.*, 447 S.W.3d at 563. Thus, a justice court is not deprived of jurisdiction merely by the existence of a title dispute; it is deprived of jurisdiction only if resolution of a title dispute is a prerequisite to determination of the right to immediate possession. *Espinoza*, 468 S.W.3d at 695-96; *Yarbrough*, 455 S.W.3d at 280.

A forcible detainer action requires proof of a landlord-tenant relationship. *Yarbrough*, 455 S.W.3d at 280. Although such a relationship is not a prerequisite to jurisdiction, the lack of such a relationship indicates that the case may present a title issue. *Id.*; *Pinnacle Premier Props., Inc.*, 447 S.W.3d at 564 n.9.

The deed of trust in this case contained the following tenancy-at-sufferance clause: "If the Property is sold pursuant to [a foreclosure sale], Borrower or any person holding possession of the Property through Borrower shall immediately surrender possession of the Property to the purchaser at that sale. If possession is not surrendered, Borrower or such person shall be a tenant at sufferance and may be removed by writ of possession."

"Tenant-at-sufferance clauses separate the issue of possession from the issue of title." *Pinnacle Premier Props., Inc.*, 447 S.W.3d at 564. "Under these provisions, a foreclosure sale transforms the borrower into a tenant at sufferance who must immediately relinquish possession to the foreclosure-sale purchaser." *Id.* In essence, a tenancy-at-sufferance clause creates a landlord-tenant relationship when the property is foreclosed. *See Yarbrough*, 455 S.W.3d at 280.

Appellees contend that "the issue of title is so intertwined with the issue of possession as to preclude jurisdiction in the justice court." Appellees state that they

11

"do not dispute" the deed of trust contains a tenancy-at-sufferance clause. Instead, they contend that the "fraudulent practice by Long Beach Mortgage" of secretly switching certain pages in the loan documents made the home equity loan, the related deed of trust, the foreclosure sale, and substitute trustee's deed void. Therefore, according to appellees, "there can be no landlord-tenant relationship between the parties" based on the tenancy-at-sufferance clause when the clause is part of the void deed of trust.

Appellees rely on *Yarbrough v. Household Finance Corporation III* to support their contentions. This reliance is misplaced.

In *Yarbrough*, Household Finance filed a forcible detainer suit in justice court to evict the Yarbroughs from their home. *Id*. at 278. The justice court record contained a deed of trust allegedly signed by the Yarbroughs, as borrowers, as security for a loan from Ameriquest Mortgage Company. *Id*. The deed of trust allowed the trustee to foreclose on the property in the event of a default, and if that occurred, the Yarbroughs were required to surrender possession under a tenancy-at-sufferance clause. *Id*. at 278, 280. When Household Finance purchased the property at a foreclosure sale and acquired a substitute trustee's deed conveying the property, it initiated a forcible detainer action to gain possession of the property from the Yarbroughs. *Id*. at 278. The justice court signed a judgment in favor of Household Finance, which the Yarbroughs appealed to the county court at law. *Id*. at 278-79.

The Yarbroughs filed a plea to the jurisdiction and an amended plea alleging that the foreclosure sale was void because the deed of trust was forged and void. *Id*. at 279. The Yarbroughs filed an affidavit, in which Ruby Yarbrough stated, "The deed of trust on which the purported foreclosure sale was based and that led to the eviction lawsuit was not signed by my husband or me, and was a forgery. . . . I understand that the people associated with Ameriquest Mortgage forged signatures

12

on many loans, and the Deed of Trust on which the foreclosure sale was based leading to this eviction would be one of them." *Id*. The county court at law denied the pleas and the Yarbroughs' affirmative defense of forgery, entering a final summary judgment awarding Household Finance possession of the property. *Id*.

On appeal, we noted that, "[l]ike the Ameriquest deed of trust here, a deed of trust may include a tenancy-at-sufferance clause that creates a landlord-tenant relationship when the property is foreclosed." *Id*. at 280. We also noted that the Yarbroughs did not challenge defects in the foreclosure process, which generally do not require a justice court to resolve a title dispute before determining the right to possession, but the Yarbroughs challenged the validity of the original deed establishing the tenancy-at-sufferance relationship. *Id*. at 281. We stated that, because the Yarbroughs argued that Household Finance's claim of a tenancy relationship cannot be sustained on a forged deed of trust they never signed because such a deed is void ab initio and passes no title, this case is "more akin to those in which the parties disputed the existence of a landlord-tenant relationship." *Id*. at 282. We concluded that, "[b]ecause the Yarbroughs contend the deed of trust and resulting substitute trustee's deed are void due to forgery, they have raised a genuine issue of title so intertwined with the issue of possession as to preclude jurisdiction in the justice court. A prerequisite to determining the immediate right to possession will be resolution of the Yarbroughs' title dispute concerning forgery of the deed of trust."

Here, appellees allege that the home equity loan and deed of trust are void because Long Beach Mortgage switched certain pages in the loan documents without appellees' knowledge to reflect an adjustable interest rate of 7.975 percent instead of a 2 percent fixed interest rate. This is a different allegation than the one at issue in *Yarbrough* because the homeowners in *Yarbrough* did not claim that some

13

information or terms of their loan or the deed of trust were forged; they offered evidence that they never signed the deed of trust on which the foreclosure sale was based and that their signatures were forged, so that a tenancy relationship could not be sustained based on a forged deed of trust because the deed was void. *See id*. at 279, 282.

Here, appellees do not deny that they signed loan documents including the note containing the adjustable interest rate, the deed of trust containing the tenancy-at-sufferance clause, and the adjustable rate rider. This rider contains provisions allowing for changes in the interest rate and monthly payments and states that it is "deemed to amend and supplement the [d]eed of [t]rust." Appellees also do not deny that the deed of trust contained a checked box for "Texas Home Equity Adjustable Rate Rider" on the same page on which appellees signed the deed of trust. This rider contained a "Limits on Interest Rate Changes" clause that provided: "The interest rate I am required to pay at the first Change Date will not be greater than 9.975% or less than 7.975%."

Appellees have not claimed that the pages of the deed of trust and adjustable rate rider containing their signatures have been switched or somehow falsified; these pages contain language indicating an adjustable interest rate. Appellees also have not denied that they entered into an agreement with Long Beach Mortgage to borrow $800,000 and that they used their home to secure the loan from Long Beach Mortgage. Appellees did not dispute that they agreed to the tenancy-at-sufferance clause contained in the deed of trust they signed. Nor have appellees alleged that their signatures acknowledging the terms and conditions within the loan documents were forged. Unlike the forgery allegations made in *Yarbrough*, appellees' claim that the mortgage company allegedly switched certain pages in the loan documents to change the interest rate terms did not raise "a genuine issue of title so intertwined

14

with the issue of possession as to preclude jurisdiction in the justice court."

The circumstances in this case are more akin to those in *Wade v. Household Finance Corporation III*, No. 06-15-00074-CV, 2016 WL 741872 (Tex. App.— Texarkana Feb. 25, 2016, no pet.) (mem. op.).

In *Wade*, Don Wade and his wife borrowed $57,999.72 from Household Finance to buy two mobile homes that were located on their real property. *Id*. at *1. To secure the loan, the Wades executed a first lien and deed of trust giving the real property to Household Finance as security for the loan. *Id*. The deed of trust contained a tenancy-at-sufferance clause. *Id*. When the Wades defaulted on the loan, Household Finance accelerated the loan and later bought the real property at a foreclosure sale. *Id*. Household Finance sent Wade a notice to vacate the real property and filed a forcible detainer suit in justice court when Wade failed to do so. *Id*. at *2. Wade responded by filing a plea to the jurisdiction, arguing, among other things, that he pledged only a little over three acres of collateral at the time of the loan and that the justice court lacked subject matter jurisdiction. *Id*. The justice court awarded possession of the real property to Household Finance. *Id*. On appeal to the county court at law, the court denied Wade's plea to the jurisdiction and ordered "Wade to be removed from the property." *Id*.

Wade claimed on appeal that the description of the real property pledged as security for repayment of the loan attached to the deed of trust wrongly reflected 90 acres of land, and his affidavit showed that he only owned 34.69 acres, after selling parcels out of his original 90-acre property. Wade claimed he agreed with Household Finance "to allow a lien of 10% of the remaining acreage, 3.4 acres, together with a lien" on the two mobile homes to be financed. *Id*. at *3, 5. Wade argued the justice court lacked jurisdiction to decide the issue of possession to 90 acres because Household Finance "fraudulently falsified the amount of acreage

described within the deed of trust, thereby making it void, and that the resolution of title was a necessary prerequisite to determining the identity of which party had the immediate right of possession." *Id*. at *5-6.

The court of appeals rejected Wade's argument. *Id*. at *7. It analyzed Wade's contentions and held that the *Yarbrough* case was inapplicable. *Id*. at *6-7. The court noted that Wade did not deny entering into an agreement with Household Finance to borrow the amount stated in the loan documents; Wade did not challenge the validity of the tenancy-at-sufferance clause in the deed of trust; and "whether Wade had title to ninety acres or 34.69 acres . . . , Wade has never claimed that his signature verifying the information contained within any of the documents was a forgery." *Id*. at *7. The court held that Wade's alleged title dispute was not so intertwined with the right to possession that it divested the justice court of jurisdiction to determine who had superior right of possession to the property. *Id*.

Having considered the evidence and arguments, we conclude that the present case is distinguishable from *Yarbrough* and similar to *Wade*. We hold that appellees are subject to the tenancy-at-sufferance clause contained in the deed of trust; the questions of possession and title are not intertwined; and the justice court had jurisdiction over the issue of possession.

## IV.  Adequate Remedy at Law

Appellees argue that they will suffer irreparable harm and do not have an adequate remedy at law because real estate is unique. But the cases appellees cite to support their argument all involved injunctions to stop foreclosures. Here, the foreclosure already has occurred. Appellees' available remedies are money damages or rescission of the foreclosure sale. *See Pinnacle Premier Props., Inc.*, 447 S.W.3d at 565. Therefore, under the facts of this case, appellees have an adequate remedy at law through rescission of the sale if the claims they brought in district court are

meritorious. *See id*.

## CONCLUSION

The trial court erred in enjoining Jelinis from pursuing its forcible detainer suit in justice court to evict appellees. The justice court had jurisdiction in this case over the question of possession because the issues of title and possession were not so intertwined that a trial court would be required to determine title before awarding possession, and appellees have an adequate remedy at law if their claims in district court are meritorious. We sustain Jelinis's second issue. And, in light of our disposition of Jelinis's second issue, we need not reach its first issue.

Accordingly, we reverse the trial court's temporary injunction insofar as it enjoins Jelinis from pursuing its forcible detainer suit in justice court to evict appellees and we render judgment denying appellees' request for a temporary injunction. Because Jelinis does not challenge the trial court's temporary injunction order in any other respects, we affirm the remainder of the order.


/s/   William J. Boyce
Justice


Panel consists of Chief Justice Frost and Justices Boyce and Jewell (Frost, C.J., concurring).

17