# Supreme Court of Texas

### No. 23-0329

Christopher F. Bertucci, as Executor of the Estate of Anthony R.
Bertucci, Deceased, and Derivatively on Behalf of American
Affordable Homes & Properties, Inc.; American Affordable
Homes, LP; Town Vista Development, LLC; Town Vista Terrace,
Inc.; and MidCrowne Senior SLP, LLC,

*Petitioners and Cross-Respondents*,

v.

Eugene L. Watkins, Jr.,

*Respondent and Cross-Petitioner*

On Petitions for Review from the
Court of Appeals for the Third District of Texas

**Argued October 1, 2024**

JUSTICE BOYD delivered the opinion of the Court.

This is a dispute between two business partners, one of whom
died while the case was pending in the trial court. The trial court
granted summary judgment for the other partner on all claims. The
court of appeals reversed as to some of the claims and remanded the case

to the trial court. Both parties filed petitions for review in this Court, and we granted both. The petitions present several different issues.

We first conclude that the court of appeals erred by holding that the deceased partner (now represented by the executor of his estate) failed to adequately brief, and thus waived, his appeal from the trial court's dismissal of claims he filed derivatively on behalf of the parties' business entities. We next conclude that the court of appeals also erred by holding that fact issues precluded summary judgment against the deceased partner on his claim that the other partner owed fiduciary duties to him individually. Third, we conclude that the court of appeals correctly held that fact issues precluded summary judgment in the other partner's favor based on limitations. And fourth, we conclude that the court of appeals correctly resolved the parties' disputes regarding two evidentiary issues.

In light of our second conclusion, we reinstate the trial court's summary judgment on the breach-of-fiduciary-duty claims the deceased partner asserted in his individual capacity. Based on our first conclusion, we remand the case to the court of appeals so that it may address the arguments the deceased partner asserted regarding his derivative claims on behalf of the business entities. Our third and fourth conclusions will assist in the resolution of all claims on remand in the court of appeals and, if necessary, in the trial court.

## I.
## Background

Anthony Bertucci and Eugene Watkins went into business together in 2001 developing low-income-housing projects. They acquired, completed, and sold various properties and projects over the

2

next fifteen years, generating substantial income for their businesses and, in turn, for themselves. Generally, Bertucci provided the funding for the projects in exchange for a sixty-percent interest, while Watkins provided industry expertise and day-to-day management for a forty-percent interest.

Bertucci and Watkins did not create an umbrella entity to own and develop their various properties and projects. Instead, they created new entities for each separate project. These entities (the B-W entities) typically included, for each project, a partnership in which Bertucci and Watkins were limited partners, along with a corporation that served as the general partner and in which Bertucci and Watkins were 60/40 shareholders.[1]

---

[1] For example, the Town Vista project was owned and operated by a limited partnership named Town Vista, LP (TVLP). Bertucci was a sixty-percent limited partner in TVLP, Watkins was a thirty-nine-percent limited partner, and a corporation called Town Vista Terrace, Inc. (TVTI) was the general partner and owned one percent. Bertucci and Watkins were the sole shareholders in TVTI, with Bertucci owning sixty percent and serving as president and Watkins owning forty percent and serving as vice president. The parties also created another corporation, Town Vista Development, LLC (TVD), to develop the Town Vista project. As with TVTI, Bertucci and Watkins were the sole shareholders of TVD, with Bertucci owning sixty percent and serving as president and Watkins owning forty percent and serving as vice president.

Similarly, the MidCrowne project was co-developed by a limited partnership named American Affordable Housing LP (AAHLP). Bertucci was a sixty-percent limited partner in AAHLP, Watkins was a thirty-nine-percent limited partner, and a corporation named American Affordable Homes and Properties Inc. (AAHPI) was the general partner and owned one percent. As with TVTI, Bertucci and Watkins were the sole shareholders of AAHPI, owning sixty and forty percent, respectively. They were also shareholders with the same ownership interests in another corporation called MidCrowne Senior SLP, LLC (MCS), which they created to monitor the MidCrowne project.

Watkins managed the B-W entities' funds using a bank account owned by Texas Community Builders, LP (TCBLP). TCBLP was a separate partnership that Watkins and his wife created for their own businesses in which Bertucci was not involved. According to Watkins, Bertucci knew Watkins was using the TCBLP account and thus commingling the B-W entities' funds with TCBLP funds and the Watkinses' personal funds. Bertucci funded the B-W entities by depositing funds into the TCBLP account, but only Watkins had authority to expend or distribute funds from that account. Watkins asserts that he and Bertucci met regularly to review the B-W entities' finances and Bertucci always approved of how Watkins was handling them.

When Bertucci's health began declining in the 2010s, he gave his power of attorney to manage his finances to his son, Christopher. In 2014, Christopher discovered accounting records Watkins kept for the TCBLP account. After reviewing the records, Christopher became concerned that Watkins had not properly managed or distributed the B-W entities' funds and instead had diverted substantial funds for his own personal use. Christopher asked Watkins to provide additional records regarding the TCBLP account, but Watkins refused on the ground that it was his private account. In 2015, Christopher demanded that Watkins provide a full accounting for all the B-W entities' funds and that proceeds from a recent sale be placed in escrow until Christopher's concerns were resolved. Soon thereafter, Christopher (acting under Bertucci's power of attorney) removed Watkins from his roles in the B-W entities and proceeded to sell all the remaining projects.

The following year, lawyers and title companies that were holding sale proceeds in escrow filed an interpleader action in district court, tendering $4.5 million into the court's registry. Watkins appeared in the case and asserted claims individually and on the B-W entities' behalf, requesting that the funds be distributed to the B-W entities and, ultimately, to Watkins and Bertucci in accordance with their respective ownership interests. Christopher (acting under the power of attorney) also appeared, asserting claims—for Bertucci individually and derivatively on behalf of the B-W entities—against Watkins for violation of the Texas Theft Liability Act, breach of fiduciary duties, breach of the duty to account, equitable disgorgement and forfeiture, and breach of contract.

Bertucci died in March 2017. The probate court named Christopher as executor of Bertucci's estate and transferred the pending interpleader lawsuit from the district court to itself. Ultimately, the parties filed cross-motions for summary judgment, and the probate court granted summary judgment for Watkins and against Bertucci[2] on all claims. Bertucci appealed, and the court of appeals reversed in part. 690 S.W.3d 341, 365 (Tex. App.—Austin 2022). It affirmed the judgment in Watkins's favor on the claims Bertucci asserted derivatively on the B-W entities' behalf, concluding Bertucci failed to adequately address those claims in his opening appellate brief. *Id.* at 352. It reversed the judgment, however, on Bertucci's individual breach-of-fiduciary-duty

---

[2] Unless we need to refer specifically to Christopher for clarity, we will refer to the petitioner here as Bertucci, meaning Christopher acting as executor of Bertucci's estate.

claims, concluding that fact issues exist as to those claims, *id.* at 357–59, and on Watkins's defenses of limitations, waiver, and ratification, *id.* at 364–65.[3] We granted both parties' petitions for review.

## II.
## Briefing Waiver

We begin by addressing the court of appeals' holding that Bertucci waived his appeal from the probate court's judgment on his derivative claims by failing to adequately address those claims in his appellate brief. *See id.* at 352. We disagree with the court's conclusion.

No one disputes that Bertucci intended and attempted to appeal the probate court's adverse judgment on the claims he asserted in his derivative capacity on the B-W entities' behalf. His notice of appeal specifically stated that Christopher was appealing "as executor of the estate of Anthony R. Bertucci, deceased, and derivatively on behalf of [the B-W entities]." He named each of the B-W entities as appealing parties in the notice of appeal and in the docketing statement.[4] And the court of appeals acknowledged that Bertucci appealed on the B-W

---

[3] The court of appeals also affirmed the probate court's no-evidence summary judgment in Watkins's favor on Bertucci's breach-of-contract claims, finding no evidence of any relevant contract between Bertucci and Watkins. Because Bertucci has not sought our review of that ruling, we do not disturb that aspect of the court of appeals' judgment.

[4] The notice of appeal also listed ten trial-court orders that concerned both the individual claims and the derivative claims. *See State ex rel. Durden v. Shahan*, 658 S.W.3d 300, 305 (Tex. 2022) (per curiam) (holding that county attorney's notices of appeal stating intent to appeal "*all* issues and as to *all* parties *affected* by the Order" qualified as a bona fide attempt to appeal on behalf of the county as well as in his individual capacity, despite the attorney not listing his individual capacity in the notices of appeal when briefs addressed the individual issues).

6

entities' behalf, both in the style it assigned to the case and in numerous notices it sent to the parties. Bertucci thus perfected an appeal and invoked the court of appeals' jurisdiction for both his individual claims and the derivative claims he asserted on the B-W entities' behalf. *See Walker v. Blue Water Garden Apartments*, 776 S.W.2d 578, 581 (Tex. 1989) ("[T]he factor which determines whether jurisdiction has been conferred on the appellate court is not the form or substance of the bond, certificate[,] or affidavit, but whether the instrument 'was filed in a bona fide attempt to invoke appellate court jurisdiction.'" (quoting *United Ass'n of Journeymen & Apprentices v. Borden*, 328 S.W.2d 739, 741 (Tex. 1959))).

The court of appeals concluded, however, that Bertucci's opening appellate brief waived the appeal he perfected on the B-W entities' behalf. The court noted that the brief's cover page identified Christopher only in his executor capacity and did not identify the B-W entities by name in the Identity of Parties section. But more importantly, in the court's view, the brief failed to assert any arguments regarding the derivative claims. 690 S.W.3d at 351. The court acknowledged that Bertucci argued in the brief that Watkins owed fiduciary duties to the B-W entities and that the entities' governing documents did not relieve Watkins from those duties, but the court concluded that this argument was "not so plainly a derivative claim that it implies that [Bertucci] is making it as a derivative claim." *Id.* The court thus did not reach any issues regarding the derivative claims and instead affirmed the probate court's summary judgment dismissing those claims. *Id.* at 352. Two justices on the en banc court dissented, concluding that the court did

"not identify any arguments specific to the derivative claims that [Bertucci] could have made but did not." *Id.* at 368 (Triana, J., dissenting).

We agree with the dissenting justices. Our appellate-procedure rules, of course, "require adequate briefing." *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 880 (Tex. 2010); *see* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). And a failure to comply with these rules can result in waiver. *Ross v. St. Luke's Episcopal Hosp.*, 462 S.W.3d 496, 500 (Tex. 2015) ("Failure to provide citations or argument and analysis as to an appellate issue may waive it.").[5] But Bertucci's appellate brief did assert arguments on the B-W entities' behalf.[6] Bertucci explicitly argued in his brief that he had "standing to assert his derivative claims" and that

---

[5] *See also RSL Funding, LLC v. Newsome*, 569 S.W.3d 116, 126 (Tex. 2018) ("A brief must provide citations or argument and analysis for the contentions and failure to do this can result in waiver."). In truth, "[w]aiver may actually be the wrong term; it may be more accurate to call this forfeiture." *Roccaforte v. Jefferson County*, 341 S.W.3d 919, 929 n.20 (Tex. 2011) (Willett, J., concurring in part); *see also United States v. Olano*, 507 U.S. 725, 733 (1993) ("Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." (quotation marks omitted)). Whether an issue has been waived rather than forfeited may not determine whether the court of appeals may or must disregard the issue—at least, the parties have not argued that the distinction makes a difference in this case—so we reserve that terminological question for another day.

[6] *See Lion Copolymer Holdings, LLC v. Lion Polymers, LLC*, 614 S.W.3d 729, 732 (Tex. 2020) ("To determine whether an issue was waived, a court looks not only to the wording of the issue but the argument under each heading to assess the intent of the parties." (citing *Holley v. Watts*, 629 S.W.2d 694, 696 (Tex. 1982))).

8

"Christopher, as executor, stepped into his father's shoes, with standing to maintain *all* of Bertucci's claims." The brief further argued that Watkins owed fiduciary duties to the B-W entities because he was an officer and director of two entities, a "control person" in two more, and a manager, member, and officer of another two. It then devoted six pages to the argument that Watkins breached his fiduciary duties *to those entities*.[7] And the brief pointed to the entities' bylaws, partnership agreements, regulations, and development agreements as the source of Watkins's legal obligations.

We conclude Bertucci's brief did not so inadequately address his derivative claims as to have waived any argument on those claims. Courts "should hesitate to resolve cases based on procedural defects and instead endeavor to resolve cases on the merits." *Lion Copolymer Holdings*, 614 S.W.3d at 732.[8] Thus, "[w]henever possible, we reject

---

[7] In fact, Bertucci's brief cited the following authorities, including the parenthetical quotes, in support of this argument:

"When a corporate officer or director diverts assets of the corporation to his own use, he breaches a fiduciary duty of loyalty to the corporation." *Sw. Livestock & Trucking Co. v. Dooley*, 884 S.W.2d 805, 808–09 (Tex. App.—San Antonio 1994, writ denied) (internal citation omitted) (corporate officers breached their fiduciary duties to corporation as a matter of law where they charged numerous personal expenses to the corporation). The same is true of a control person in a limited partnership. *See Drexel Highlander L.P. v. Edelman*, No. 13-31182-BJH, 2014 WL 1796217, at *17–19 (Bankr. N.D. Tex. May 6, 2014) (managing partner breached fiduciary duty by depositing company funds in his account and using substantial portion of funds to pay his personal expenses).

[8] *See First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 221 (Tex. 2017) ("We generally hesitate to turn away claims based on waiver or failure to preserve the issue."); *Fredonia State Bank v. Gen. Am.*

form-over-substance requirements that favor procedural machinations over reaching the merits of a case." *Dudley Constr., Ltd. v. Act Pipe & Supply, Inc.*, 545 S.W.3d 532, 538 (Tex. 2018). At the same time, however, briefing may be adequate to preserve an issue but insufficient to properly assist an appellate court. That is why our appellate-procedure rules permit courts to "require additional briefing" if "the case has not been properly presented in the briefs." TEX. R. APP. P. 38.9(b).[9] If the court finds that supplemental briefing would assist it in performing its function, Rule 38.9 permits it to direct the parties to supply that briefing.

Neither the court of appeals nor Watkins, however, has identified any reason to entirely deny Bertucci the opportunity to appeal the adverse judgment on his derivative claims. Watkins has not argued that he was unfairly surprised or confused by Bertucci's briefing. In fact,

---

*Life Ins. Co.*, 881 S.W.2d 279, 282 (Tex. 1994) ("The Rules of Appellate Procedure . . . should not be read to defeat the right to appeal except when such a construction is absolutely necessary."); *Weeks Marine, Inc. v. Garza*, 371 S.W.3d 157, 162 (Tex. 2012) ("[A]ppellate courts should reach the merits of an appeal whenever reasonably possible." (quoting *Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008))).

[9] *See* TEX. R. APP. P. 38.7 ("A brief may be amended or supplemented whenever justice requires, on whatever reasonable terms the court may prescribe."); *Horton v. Stovall*, 591 S.W.3d 567, 568 (Tex. 2019) (holding that court of appeals' disposition of appeal based on "remediable" errors in briefing "conflict[ed] with the rules of appellate procedure and our briefing-waiver precedent" and such errors "should not have been fatal to the appeal absent a reasonable opportunity to cure the defects"). Rule 38.9, however, does not *require* a court of appeals to request supplemental briefing, and if the briefing does not make arguments the court finds persuasive, its decision on an issue may reflect that failure. The rule provides a tool to assist the court in performing its appellate function; it does not burden the court with an obligation to allow a party an additional bite at the briefing apple.

Watkins ably addressed Bertucci's derivative claims in his own responsive appellate brief.[10] *See Durden*, 658 S.W.3d at 305 ("The parties undoubtedly understood that the sanctions orders were at issue on appeal, and thus there is no question of unfair surprise or confusion."). Watkins asserts, however, that Bertucci waived any appeal on the derivative claims because his brief did not address each specific B-W entity and "explain why summary judgment against it was error" or "identify fact issues regarding its own distinct claim, harm, and damages." In short, Watkins complains that Bertucci's brief did not explain "why summary judgment was improper with respect to each entity." Even assuming that assertion is true, however, the result is that Bertucci's brief may have failed to adequately explain why the probate court erred by granting summary judgment against each B-W entity. It did not constitute a waiver of the right to complain of that ruling on the entities' behalf.

We conclude that Bertucci's failure to list the B-W entities on the cover page or in the Identity of Parties section of his opening brief was, at most, a minor and technical defect[11] that Bertucci should have been

---

[10] Watkins argued in his brief in the court of appeals, for example, that Bertucci failed "to present some evidence that Watkins, individually, breached a fiduciary duty owed to [Bertucci] or to the [B-W entities]," failed to identify a contractual relationship between TCBLP and the B-W entities, and failed to show that "Watkins breached any duty to account to [Bertucci] or to any [B-W entity]," and further argued that the trial court properly dismissed Bertucci's derivative claims.

[11] We note that Bertucci's brief stated in the Identity of Parties section that Christopher was appealing as executor and for all "Appellants," listed each of the entities by name in the Statement of Facts section, and referred to

11

afforded the opportunity to correct. And we conclude that Bertucci's brief asserted arguments on the B-W entities' behalf, at least sufficiently to avoid waiving those issues. This holding "is consistent with our oft-repeated position that a party should not lose the right to appeal because of an 'overly technical' application of the law." *Briscoe v. Goodmark Corp.*, 102 S.W.3d 714, 717 (Tex. 2003) (citing *Lehmann v. Har–Con Corp.*, 39 S.W.3d 191, 205 (Tex. 2001); *Verburgt v. Dorner*, 959 S.W.2d 615, 616–17 (Tex. 1997)).

Because the court of appeals erred by not addressing Bertucci's arguments regarding his derivative claims, we will remand the cause to that court to consider them in the first instance. To the extent the court believes Bertucci's briefs insufficiently addressed those issues, it retains discretion to require him to submit additional briefing. *See* TEX. R. APP. P. 38.9(b).

## III.
## Fiduciary Duties

We now turn to one of the issues Watkins raises to challenge the court of appeals' judgment. Watkins contends that the court of appeals erred by holding that fact issues precluded summary judgment on Bertucci's claim that Watkins breached fiduciary duties he owed to Bertucci *individually*. Watkins argues that, as a matter of law, he did not owe any fiduciary duty to Bertucci as an individual. *See* 690 S.W.3d at 359. The probate court agreed, but the court of appeals reversed, holding that the record establishes a fact issue because some evidence

---

the "Appellants" in the plural throughout, including in the title, the prayer for relief, and in counsel's signature block.

12

demonstrates that Watkins "exert[ed] operating control over the affairs of the limited partnership[s]" to such an extent that he may have created such duties. *Id.* (citing *Strebel v. Wimberly*, 371 S.W.3d 267, 281 (Tex. App.—Houston [1st Dist.] 2012, pet. denied)).

Under Texas law, *general* partners of a partnership owe each other a formal duty of loyalty and care. TEX. BUS. ORGS. CODE § 152.204. This Court and others have described this duty as "a duty in the nature of a fiduciary duty." *M.R. Champion, Inc. v. Mizell*, 904 S.W.2d 617, 618 (Tex. 1995) (citing the predecessor statutes TEX. REV. CIV. STAT. arts. 6132b–4.04, –4.05). But *limited* partners generally do not owe each other fiduciary duties. *See* TEX. BUS. ORGS. CODE § 153.003(c) ("A limited partner shall not have any obligation or duty of a general partner solely by reason of being a limited partner."). A limited partner, by definition, "does not take part in managing the business." *Limited partner*, BLACK'S LAW DICTIONARY (12th ed. 2024).

Like the court of appeals here, however, some courts have held that a limited partner may assume fiduciary duties to other limited partners if he ceases to act as a limited partner and instead acts as a general partner by "tak[ing] part in the daily operations of the business." *See Strebel*, 371 S.W.3d at 279 (holding that a limited partner owes a fiduciary duty to another limited partner when he "also takes on a nonpassive role by exercising control over the partnership in a way that justifies the recognition of such duties"); *see also* TEX. BUS. ORGS. CODE § 153.102 (providing that a limited partner can be liable to a third party when he "participates in the control of the business" and leads the

13

third party to believe he is a general partner). Watkins argues that this "control test" is "little[] used" and contrary to Texas law.

We agree with Watkins that, under the circumstances of this case, the court of appeals erred in holding that Watkins may have owed fiduciary duties to Bertucci individually. We reach this conclusion, however, because Bertucci failed to assert or establish such a duty in the probate court and concedes in this Court that any such duty is irrelevant in light of Bertucci's derivative claims that Watkins owed and breached fiduciary duties *to the B-W entities*.

Bertucci alleged in the trial court that Watkins owed him fiduciary duties, separate from the duties Watkins owed to the B-W entities, because Watkins assumed the role of "managing partner" in their "venture." As proof, Bertucci pointed to emails in which Watkins described himself to third parties as the "managing, operational and accounting partner" for the various projects. Bertucci made the same assertions in his summary-judgment motion. Bertucci asserted that Watkins effectively acted as a general partner or managing partner, but Bertucci did not explain how Watkins's positions created a fiduciary relationship between Watkins *and himself*. Nor did he request in his prayer for relief any conclusion that Watkins owed a fiduciary duty to Bertucci *individually*, but only that Watkins "was a fiduciary."[12]

Watkins pointed this out in his response to Bertucci's motion, noting that the motion "merely assumes that Watkins owed fiduciary

---

[12] Similarly, Bertucci's motion for partial summary judgment on the existence of a fiduciary duty requested a judgment concluding only generally that "as the manager of the business operations and accounting manager for the [B-W entities], Watkins was a fiduciary during the Relevant Period."

14

duties to Bertucci." Watkins explained that, generally, an officer or director of a corporation only owes a fiduciary duty to the corporation, not to fellow officers or directors. *See Ritchie v. Rupe*, 443 S.W.3d 856, 868–69 (Tex. 2014). And members of limited-liability companies likewise do not owe formal fiduciary duties to fellow members simply because of their relationship as co-members. *See Suntech Processing Sys., L.L.C. v. Sun Commc'ns, Inc.*, No. 05-99-00213-CV, 2000 WL 1780236, at *6 (Tex. App.—Dallas Dec. 5, 2000, pet. denied); s*ee also Gadin v. Societe Captrade*, No. CIV.A. 08-CV-3773, 2009 WL 1704049, at *3 (S.D. Tex. June 17, 2009) ("Texas courts have not yet held that a fiduciary duty exists as a matter of law among members in a limited liability company."). In reply, Bertucci dismissed Watkins's arguments, claiming that any distinction between the companies and Bertucci individually was "of no consequence" because Bertucci pleaded both individual and derivative claims. Other than that statement, he wholly failed to engage in Watkins's arguments on this point.

Bertucci again had an opportunity to submit facts and argument supporting his assertion that Watkins owed fiduciary duties to him individually in response to Watkins's summary judgment motions. Watkins moved for both traditional and no-evidence summary judgment on Bertucci's breach-of-fiduciary-duty claim, which the trial court granted. Watkins argued that he owed no formal fiduciary duty to Bertucci individually because they were both members of the limited-liability companies and limited partners in the partnerships. Watkins also argued that no "informal" fiduciary relationship had arisen between the two partners. In his response to Watkins's

15

summary-judgment motions, Bertucci argued that he "need not prove Watkins owed Bertucci a direct fiduciary duty" because Bertucci was suing "derivatively on behalf of the entities." In short, Bertucci submitted less than a scintilla of evidence to the trial court that Watkins owed fiduciary duties to Bertucci *individually* and effectively conceded that the issue was irrelevant in light of his derivative claims on the B-W entities' behalf.

And Bertucci fared no better in the court of appeals. There, he argued only that Watkins owed a fiduciary duty to the "Appellants," collectively, referring to the B-W entities and Bertucci individually. Bertucci disregarded the fact that the analysis and proof may differ when establishing a fiduciary duty a partner or company officer owes to a fellow partner or officer, as opposed to the entity itself, which Watkins again pointed out to that court.

It was only in his reply brief that Bertucci argued for the first time in the court of appeals that Watkins owed him a fiduciary duty individually because Watkins assumed control over the B-W entities and functioned as a general partner. The court of appeals agreed with this argument, holding that some evidence exists that Watkins "exert[ed] operating control over the affairs of the limited partnership" to such an extent that he may have created a fiduciary duty to Bertucci. 690 S.W.3d at 359 (citing *Strebel*, 371 S.W.3d at 281). A court of appeals, however, cannot reverse a summary judgment on grounds not presented to the trial court. *See* TEX. R. CIV. P. 166a(c) ("Issues not expressly presented

16

to the trial court by written motion, answer or other response shall not be considered on appeal as grounds for reversal.").[13]

In any event, even if Bertucci both made and preserved this argument, it still must fail. We need not decide here whether, as a general matter, a limited partner may assume fiduciary duties to other limited partners by acting as a general partner. *See Strebel*, 371 S.W.3d at 281. In this Court, Bertucci argues only that "Watkins's undisputed control over [Bertucci]'s funds, at minimum, imposed upon him a fiduciary duty to use that money in strict accordance with [Bertucci]'s authorization."[14] This control, Bertucci argues, created a type of principal-agent relationship. But the mere fact that Bertucci handed funds over to Watkins creates neither an agency relationship nor a

---

[13] *See also, e.g.*, *Johnson v. Brewer & Pritchard, P.C.*, 73 S.W.3d 193, 204 (Tex. 2002) ("A court cannot grant summary judgment on grounds that were not presented." (citing *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 912 (Tex. 1997))); *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 341 (Tex. 1993) ("A [summary judgment] motion must stand or fall on the grounds expressly presented in the motion."); *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 679 (Tex. 1979) ("[T]he non-movant must now, in a written answer or response to the motion, expressly present to the trial court those issues that would defeat the movant's right to a summary judgment and failing to do so, may not later assign them as error on appeal.").

[14] In his briefing in this Court, Bertucci also rejects the need to argue that an *informal* fiduciary duty arose between the partners. *See Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex. 2005) ("We also recognize an informal fiduciary duty that arises from 'a moral, social, domestic or purely personal relationship of trust and confidence.'" (quoting *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 287 (Tex. 1998))); *Associated Indem. Corp.*, 964 S.W.2d at 288 ("To impose an informal fiduciary duty in a business transaction, the special relationship of trust and confidence must exist prior to, and apart from, the agreement made the basis of the suit."). Thus, we do not consider whether an informal fiduciary duty existed here.

fiduciary one.[15] Any fiduciary duty a limited partner could owe to another limited partner would at least have to be based on actions that are not within the realm of the limited partner's position. *See id.* at 272–73 (holding that limited partner owed fiduciary duty to other partners when he autonomously reduced another partner's sharing ratio without approval from the general partner's board of directors, contrary to that company's agreement). Here, Bertucci concedes that Watkins's role as manager of the funds was assigned to him in his capacity as a limited partner.

Bertucci argues, however, that when Watkins misappropriated funds, he was not doing so in his capacity as a limited partner but as the "managing, operational and accounting partner."[16] But Watkins never

---

[15] If we were to accept Bertucci's argument that Watkins exerted control over the companies and the funds to the exclusion of Bertucci, we could not also agree that Watkins acted as an agent of Bertucci, because an agent is one who is subject to the principal's control. *See Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 697 (Tex. 2017) ("To establish an agency relationship, one must show a manifestation of consent by the purported agent to act on the principal's behalf and subject to the principal's control, together with a manifestation of consent by the purported principal authorizing his agent to act." (citing *Grissom v. Watson*, 704 S.W.2d 325, 326 (Tex. 1986))). Either Bertucci authorized Watkins's acts as his principal or he could not because of Watkins's usurpation of control, but he could not do both simultaneously.

[16] Historically, we described a managing partner as owing the other partners in a venture "even a greater duty of loyalty than is normally required." *Huffington v. Upchurch*, 532 S.W.2d 576, 579 (Tex. 1976); *Smith v. Bolin*, 271 S.W.2d 93, 96 (Tex. 1954). The 1993 Revised Partnership Act, which governs "the relationship of the partners and between the partners and the partnership," at least to "the extent that the partnership agreement does not otherwise provide," *see* TEX. BUS. ORGS. CODE § 152.002(a), states only that partners owe each other a duty of loyalty and care. *Id.* § 152.204(a); *see Johnson*, 73 S.W.3d at 199 (noting that we have "historically held that partners also owe certain fiduciary duties to one another" but noting that the Texas

18

served as a managing partner nor adopted a managing role over the companies' finances without Bertucci's involvement. *See Strebel*, 371 S.W.3d at 272–73. A partner who describes himself as a "managing" or "operational" partner to a third party is not necessarily assuming the legal role of managing partner. *See Ingram v. Deere*, 288 S.W.3d 886, 900 (Tex. 2009) ("[M]erely referring to another person as 'partner' in a situation where the recipient of the message would not expect the declarant to make a statement of legal significance is not enough."). Watkins later explained the very same, stating that he used "managing partner" not as a "legal conclusion, but a description of [his] role as the administrative person, who managed vendors, opened the mail, organized payables, etc. It was not to suggest that Bertucci was not involved in or did not make decisions for the companies . . . ."

In any event, in light of our holding that Bertucci has not waived his appeal regarding his derivative claims, we fail to see how dismissal of his individual breach-of-fiduciary-duty claim causes him any harm. Consistent with Bertucci's assertions in his pleadings in the probate court, Watkins asserts in his brief that "the [B-W entities] have no claims distinct from [Bertucci's individual] claims" because "[t]here is only one alleged harm—the alleged theft of [Bertucci's] money that should have been spent on [the B-W entities'] expenses." And thus "the individual claims and the derivative claims seek the same remedies for

---

Revised Partnership Act may have affected what duties partners owe to one another). By their agreement, partners can except "specific types of activities or categories of activities" from the duty of loyalty, TEX. BUS. ORGS. CODE § 152.002(b)(2), but Bertucci and Watkins have not done so here.

the same alleged conduct by Watkins." On remand, as we have held, the court of appeals should consider the arguments made regarding that harm as they relate to Bertucci's derivative claims. Under these circumstances, we agree with Watkins that the court of appeals erred by holding that a fact issue exists on whether Watkins owed fiduciary duties to Bertucci individually.[17]

## IV.
## Limitations

We turn next to Watkins's argument that the court of appeals erred by finding that fact issues preclude summary judgment on Watkins's limitations defense. On this point, we agree with the court of appeals.

Watkins argues that even if he had misappropriated or improperly distributed the B-W entities' funds, and even if the discovery rule applies, the evidence conclusively establishes that Bertucci knew or should have known of his actions long before he filed his claims against Watkins.[18] According to Watkins, this fact is conclusively established by the evidence that Bertucci was the sole investor and an officer, director, member, or partner in the B-W entities (and thus, like Watkins, owed fiduciary duties to the B-W entities), and always had access to Watkins's

---

[17] We do not imply that our reasoning here should extend to all cases in which a plaintiff brings both individual and derivative claims. In some circumstances, the claims and resulting harm may differ between the individual and the business entity. Here, Bertucci argues that the claims and the harm done are the same under both theories, and we take him at his word.

[18] The statute of limitations is four years for a claim for breach of fiduciary duty and two years for a claim for theft. TEX. CIV. PRAC. & REM. CODE §§ 16.004(a)(5), .003(a).

accounting records.[19] The fact that Watkins owed fiduciary duties to the B-W entities, he asserts, did not relieve Bertucci of his duty to use reasonable diligence to discover any malfeasance committed by Watkins and any resulting injury. *See Berry v. Berry*, 646 S.W.3d 516, 526 (Tex. 2022) (holding that person who is owed a fiduciary duty is "not altogether absolved of the usual obligation to use reasonable diligence to discover an injury"); *Marcus & Millichap Real Est. Inv. Servs. of Nev. v. Triex Tex. Holdings, LLC*, 659 S.W.3d 456, 462 (Tex. 2023) (holding court of appeals erroneously "relieved [Triex] of the responsibility of diligent inquiry" because of its fiduciary relationship with the plaintiff). This evidence, Watkins argues, conclusively establishes that Bertucci "was fully aware, or in the exercise of reasonable diligence should have known, of facts giving rise to the causes of action alleged" long before he filed his claims.

We agree with the court of appeals, however, that other evidence creates a fact issue on this point. This includes evidence that Watkins agreed that he would manage the B-W entities and handle the accounting in accordance with the partners' agreements, that Watkins owed fiduciary duties to the B-W entities, that he alone had signature authority over the TCBLP account, that he consistently assured Bertucci that he was properly managing the funds and was only taking amounts Bertucci had agreed he could take, that he in fact used funds Bertucci invested in the B-W entities for his personal benefit, and that,

---

[19] Watkins also relies on his own testimony that Bertucci agreed to and approved all of the expenditures. But as we explain below, the court of appeals correctly held that the Dead Man's Rule bars this testimony.

21

when requested by Christopher, he refused to provide financial information regarding the TCBLP account and made inconsistent statements about the amounts he was entitled to take for his personal use and the amounts he actually took. We agree with the court of appeals that this evidence is sufficient to create a fact issue on whether and when Bertucci should have discovered Watkins's alleged misappropriations of the funds. *See Kinzbach Tool Co. v. Corbett-Wallace Corp.*, 160 S.W.2d 509, 512–14 (Tex. 1942) (holding that a fiduciary owes an affirmative duty of full disclosure); *S.V. v. R.V.*, 933 S.W.2d 1, 8 (Tex. 1996) (holding that a claimant's duty of inquiry is lessened by defendant's fiduciary duty).

## V.
### Evidentiary Issues

Finally, we address two evidentiary issues. The first involves a report prepared by a court-appointed accountant, and the second involves Watkins's testimony that Bertucci expressly approved Watkins's expenditures of the B-W entities' funds. We conclude that the court of appeals did not err by declining to address the expert's report or by holding that the Dead Man's Rule bars Watkins's testimony.

### A. Expert Report

Bertucci argues that the court of appeals abused its discretion by failing to address and resolve his argument that the probate court erred by accepting and relying on a court-appointed expert's report. Under these circumstances, and in light of Watkins's concession that Bertucci may challenge the report on remand, we disagree.

The probate court appointed a certified public accountant to review Watkins's records and assist the court in understanding

22

Watkins's efforts to account for the B-W entities' funds.[20] The accountant initially submitted a report in which he noted that Watkins maintained no "general ledger" for the B-W entities, which he observed "is not normal," and that he thus had to "rel[y] substantially on Mr. Watkins['s] explanation of the checks and deposits." Relying on Watkins's explanations, the report concluded that the expenditures, including compensation payments Watkins made to himself, were "properly accounted for." Bertucci objected to the report, noting several errors and complaining of the accountant's reliance on Watkins's assertions. The accountant then acknowledged that his report contained "errors or mistakes" and "assumptions . . . that proved to be wrong" and requested that he be permitted to withdraw the report and replace it with an amended report correcting the errors. The proposed amended report retracted his earlier conclusion that Watkins properly accounted for his compensation distributions.

The probate court overruled Bertucci's objections, concluding that they were untimely. *See* TEX. R. CIV. P. 172 ("Exceptions to such report or of any item thereof must be filed within 30 days of the filing of such report."). The court thus held that, despite the accountant's admission that his initial report contained errors, it was nevertheless "conclusive as to the accounts stated therein."[21] Bertucci raised this issue in the

---

[20] *See* TEX. R. CIV. P. 172 ("When an investigation of accounts . . . appears necessary for the purpose of justice between the parties to any suit, the court shall appoint an auditor or auditors to state the accounts between the parties and to make report thereof to the court as soon as possible.").

[21] Bertucci moved for reconsideration of this ruling, addressing Watkins's untimeliness argument, and moved to extend the thirty-day period

23

court of appeals, asserting several arguments as to why the report was neither admissible nor conclusive on the matters it addresses. As to Rule 172's objection deadline, Bertucci argued that the deadline does not apply because the accountant failed to "verify his report by affidavit" as Rule 172 requires and thus it did not qualify as a report to which the rule requires a timely objection.

The appellate court declined to address Bertucci's arguments, concluding that resolution of the issue "would not alter our review and is unnecessary to the disposition of this appeal." 690 S.W.3d at 356 n.7 (citing TEX. R. APP. P. 47.1). It reached this conclusion because it ultimately decided to reverse the summary judgment in Watkins's favor on other grounds, specifically that fact issues exist on whether Bertucci's claims are barred by limitations. The court of appeals apparently believed that, because it did not address Bertucci's complaints about the accountant's initial report, Bertucci could challenge the report on remand. Bertucci urges us to require the court of appeals to address the issue because the probate court relied on the report to grant summary judgment for Watkins and its ruling on the report's conclusiveness and admissibility is now the law of the case. As a result, Bertucci asserts, the report will be binding and dispositive on remand, making it "insulated from impeachment or objection at trial."

We are inclined to agree that the report—which the accountant did not verify and ultimately conceded contains errors, mistakes, and

---

to object, but the probate court denied the motions. Bertucci then sought mandamus relief, but the court of appeals denied relief because Bertucci had an adequate remedy by appeal. *In re Bertucci*, 590 S.W.3d 113, 120 (Tex. App.—Austin 2019, orig. proceeding). Bertucci did not seek relief in this Court.

24

incorrect assumptions—is neither conclusive nor admissible under Rule 172. But like the court of appeals, we conclude that we need not reach and resolve that issue here. Watkins acknowledges in his brief to this Court that, if we remand the case for trial (as the court of appeals did), the report "is not conclusive as to all matters in dispute" and any ruling "on the potential admissibility of the Audit Report at a future trial is [currently] premature." We accept these acknowledgements as a concession that, despite his concerns about the law of the case, Bertucci can in fact challenge and controvert the report and its conclusions on remand in the probate court. We thus conclude that the court of appeals did not abuse its discretion by declining to address the issue.

## B. The Dead Man's Rule

We turn finally to Watkins's arguments challenging the court of appeals' rulings regarding the "Dead Man's Rule." In support of his summary-judgment motion, Watkins substantially relied on his own testimony that Bertucci was fully aware of Watkins's management of the B-W entities' funds and expressly "approved" of (and even "instructed") the transactions and expenditures Watkins made. Bertucci objected to this testimony under Texas Rule of Evidence 601(b), which prohibits a party in a suit by or against a decedent's heirs or representatives from testifying "about an oral statement" made by the decedent unless (A) "the party's testimony about the statement is corroborated" or (B) "the opposing party calls the party to testify at the trial about the statement." TEX. R. EVID. 601(b)(2), (3). This "Dead Man's Rule" exists "to prevent one party from having an unfair advantage over another whose lips had been sealed by death by excluding testimony

against a decedent which he might deny or contradict if he were living." *Lewis v. Foster*, 621 S.W.2d 400, 404 (Tex. 1981).

The probate court overruled Bertucci's objection, but the court of appeals reversed, concluding that the Dead Man's Rule bars Watkins's testimony that Bertucci "approved of the transactions" because no evidence corroborated that testimony. 690 S.W.3d at 357. Watkins contends that the court of appeals erred in this ruling because his testimony about Bertucci's approval was corroborated and because Christopher himself offered much of that testimony. We agree with the court of appeals on this issue.

First, Watkins contends his testimony regarding Bertucci's statements approving the expenditures and distributions is corroborated by evidence that Bertucci never objected to his management of the funds or to the expenditures. According to Watkins, Bertucci's "inaction for almost 13 years . . . is generally consistent with his tacit if not express approval of how his money was being spent." Although evidence of Bertucci's "inaction" may be "generally consistent" with approval, we do not agree that it corroborates Watkins's testimony that Bertucci in fact approved of the expenditures. "Corroborating evidence need not be sufficient standing alone, but [it] must tend to confirm and strengthen the testimony of the witness and show the probability of its truth." *Fraga v. Drake*, 276 S.W.3d 55, 61 (Tex. App.—El Paso 2008, no pet.); *see also Corroborating evidence*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("Evidence that differs from but strengthens or confirms what other evidence shows . . . .").

26

Watkins concedes that evidence of Bertucci's inaction could corroborate his testimony about Bertucci's approval only if Bertucci was in fact fully aware of the disputed expenditures. But that fact is itself hotly disputed between the parties, and evidence that Bertucci did not object to the expenditures is no more consistent with Bertucci approving of the expenditures than it is that Bertucci had no knowledge of them. Under these circumstances, we cannot rely on such evidence to support either inference. *See City of Keller v. Wilson*, 168 S.W.3d 802, 813 (Tex. 2005) ("When the circumstances are equally consistent with either of two facts, neither fact may be inferred."). As a result, we cannot conclude that Watkins's testimony that Bertucci never objected to the expenditures somehow corroborates his testimony that Bertucci expressly approved those expenditures.

Next, Watkins argues that Christopher himself submitted evidence that Bertucci was aware of the deposits and expenditures involving the B-W entities' funds and "that Watkins routinely accounted to [Bertucci] for disbursements made on behalf of the" B-W entities. In support, Watkins points to documents in the record that Bertucci cited and relied upon in his summary-judgment pleadings.

We agree with Bertucci, however, that he did not "call[] [Watkins] to testify at the trial about the[se] statements" simply by relying on the documents that contain them. *See* TEX. R. EVID. 601(b)(3)(B). As Bertucci explains, he "has never called Watkins to testify to any oral statement of [Bertucci]," and his references to the documents cannot fairly be read as an intent "to adopt, endorse[,] or even draw attention to" Watkins's testimony about what Bertucci said when he was alive. Moreover, even

27

if Bertucci's reliance on these documents constituted "call[ing] [Watkins] to testify at the trial about the statements," these statements establish only that Bertucci may have had knowledge of the transactions, not that he approved of them. We hold that the court of appeals correctly concluded that the Dead Man's Rule bars Watkins's testimony that Bertucci "approved" the expenditures.

## VI.
## Conclusion

For the reasons explained, we conclude that (1) the court of appeals erred by holding that Bertucci waived his appeal from the trial court's dismissal of the claims he filed derivatively on behalf of the B-W entities by failing to adequately brief those arguments, (2) the court of appeals also erred by holding that fact issues precluded summary judgment on Bertucci's claim that Watkins owed fiduciary duties to Bertucci, individually, (3) the court of appeals correctly held that fact issues preclude summary judgment in Watkins's favor based on limitations, and (4) the court of appeals correctly resolved the parties' disputes regarding the expert report and the Dead Man's Rule. Based on these conclusions, we reinstate the probate court's summary judgment on the breach-of-fiduciary-duty claims Bertucci asserted in his individual capacity and remand the case to the court of appeals so that it may address Bertucci's arguments regarding the derivative claims he asserted on the B-W entities' behalf. The court should address those claims in light of our conclusions regarding the expert report and the Dead Man's Rule and, in the event the court of appeals reverses the summary judgment dismissing the derivative claims, those conclusions will apply to the final resolution of the case on remand in the trial court.

28

_____

Jeffrey S. Boyd
Justice

**OPINION DELIVERED:** March 14, 2025